**SONNENSCHEIN NATH &
ROSENTHAL LLP**
SCOTT STEIN (AZ Bar No. 022709)
2398 East Camelback Road
Suite 1060
Phoenix, AZ  85016-9009
Facsimile (602) 508-3914
Telephone (602) 508-3900

Christian S. Genetski (Pro Hac Vice Application Pending)
1301 K Street, NW
Suite 600-East Tower
Washington, DC  20005
Facsimile (202) 408-6399
Telephone (202) 408-6400

Attorneys for Defendants and Cross-Claimants
Vivendi Games, Inc.
and Blizzard Entertainment, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| MDY INDUSTRIES, LLC, | **Case No.:**  2-06-cv-02555-PHX-DGC |
| Plaintiff and Counter-Claim Defendant | |
| vs. | |
| BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC. | **DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT** |
| Defendants and Counter-Claim Plaintiffs. | The Honorable David G. Campbell |
| BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC. | |
| Third-Party Plaintiffs, | |
| vs. | |
| MICHAEL DONNELLY, | |
| Third-Party Defendant. | |

Defendants Blizzard Entertainment, Inc. and Vivendi Games, Inc. (collectively "Defendants" or "Blizzard"), by and through their attorneys Sonnenschein Nath & Rosenthal LLP, hereby answer the First Amended Complaint of plaintiff MDY Industries, LLC, and for their Counterclaims against MDY Industries, LLC and Third-Party Complaint against Michael Donnelly ("Donnelly"), allege as follows:

## ANSWER

### PARTIES AND JURISDICTION

1.      Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 1 and, on that basis, deny them.  Defendants also affirmatively allege, upon information and belief, that Michael Donnelly is the alter ego of MDY Industries, LLC.

2.      Defendants admit the allegations in paragraph 2.

3.      Defendants admit the allegations in paragraph 3.

4.      Paragraph 4 asserts legal conclusions to which no answers are required.

5.      Paragraph 5 asserts legal conclusions to which no answers are required.  To the extent that answers are required, Defendants deny the allegations contained in paragraph 5.

6.      Paragraph 6 asserts legal conclusions to which no answers are required.  To the extent that answers are required, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 6 and, on that basis, deny them.

### SUBJECT MATTER OF CONTROVERSY AND ACTS COMPLAINED OF

7.      Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 7 and, on that basis, deny them.  Defendants also affirmatively allege, on information and belief, that other persons are involved in the sale of WoWGlider, including Michael Donnelly.

8.      Defendants admit the allegations in the first sentence of paragraph 8.  Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in the second sentence of paragraph 8 and, on that basis, deny them.  Defendants deny the allegations in the third sentence of paragraph 8.

9.      Defendants deny the allegations in paragraph 9.

10.     Defendants deny the allegations in paragraph 10.

11.     Defendants deny the allegations in paragraph 11.

12.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 12 and, on that basis, deny them.

13.     Paragraph 13 asserts legal conclusions to which no answers are required.  To the extent an answer is called for, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 13 and, on that basis, deny them.

14.     Defendants deny the allegations in paragraph 14.

15.     Defendants deny the allegations in paragraph 15.

16.     Defendants deny the allegations in paragraph 16.

17.     Defendants deny the allegations in paragraph 17.

Dated:  February 16, 2007                    Respectfully submitted,


                                             __/s Scott Stein_____
                                             Scott Stein
                                             SONNENSCHEIN NATH & ROSENTHAL LLP
                                             2398 East Camelback Road
                                             Suite 1060
                                             Phoenix, AZ  85106-9009
                                             Telephone:  (602) 508-3900
                                             Facsimile:  (602) 508-3914

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Christian S. Genetski
1301 K Street, NW
Suite 600-East Tower
Washington, DC  20005
Facsimile (202) 408-6399
Telephone (202) 408-6400

Attorneys for Defendants Blizzard Entertainment,
Inc. and Vivendi Games, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNTERCLAIMS AND THIRD-PARTY CLAIMS AGAINST MDY INDUSTRIES LLC AND MICHAEL DONNELLY**

For its counterclaim against plaintiff MDY Industries LLC and complaint against Michael Donnelly, (hereafter collectively referred to as "MDY"), defendants and counter-claimants Blizzard and Vivendi Games (collectively "Blizzard") allege as follows:

**NATURE OF THE ACTION**

1.      Blizzard seeks injunctive relief, money damages and related relief against MDY. Donnelly is an individual responsible for the development and sale of "WoWGlider," a software program that enables users to circumvent Blizzard's security measures and infringe Blizzard's intellectual property rights in its World of Warcraft® ("WoW") software.  WoWGlider's unauthorized code then enables its users to cheat fellow players by completing in-game tasks and building characters with little or no human participation, thereby giving WoWGlider users significant unfair and contractually prohibited advantages over legitimate players.  Via the website wowglider.com, MDY actively markets and promotes WoWGlider with knowledge that they are encouraging and enabling WoWGlider users to breach their contracts with Blizzard.  MDY's actions have unjustly profited Michael Donnelly while negatively impacting the experience of millions of legitimate WoW gamers and causing significant damage to Blizzard.  The acts of MDY, described in more detail below, constitute tortious interference with the contracts between Blizzard and WoW users; contributory and vicarious infringement of registered copyrights in violation of the Copyright Act, as amended, 17 U.S.C. § 501; trafficking in technology designed for the purpose of circumventing copyright protection systems in violation of the Digital Millennium Copyright Act, as amended, 17 U.S.C. § 1201(a)(2) and (b)(1); trademark infringement in violation of Section 43(a) of the Lanham Act; and unfair competition and unjust enrichment under the laws of the State of Arizona.

**JURISDICTION AND VENUE**

2.      This Court has original jurisdiction to adjudicate the copyright, DMCA, and trademark claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court has

supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy.

3.      Venue in this jurisdiction is proper pursuant to 28 U.S.C. §§ 1391 and 1400 because this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and in which Donnelly and MDY Industries LLC reside.

## THE PARTIES

4.      Plaintiff Blizzard Entertainment, Inc. is a Delaware corporation organized and existing under the laws of the State of California, with a principal place of business at P.O. Box 18979, Irvine, California 92623.  Plaintiff Vivendi Games, Inc. is the parent corporation of Blizzard Entertainment, Inc.  Vivendi Games, Inc. is a Delaware corporation having a principal place of business at 6060 Center Drive, Los Angeles, California 90045.

5.      On information and belief, Defendant Donnelly is an Arizona resident residing at 4808 N. 24th Street, Apt. 1008, Phoenix, Arizona 85016.

6.      On information and belief, Donnelly is the only Member of MDY Industries LLC, an Arizona limited liability company organized in December 2004, and registered at 2311 E. Shea Boulevard, Phoenix, Arizona 85016.  On information and belief, Michael Donnelly is the alter ego of MDY Industries, LLC.

## BACKGROUND FACTS

### Blizzard's World of Warcraft® Online Computer Game

7.      Blizzard is a premier publisher of entertainment software.  Blizzard is best known for its high-quality computer games, including the DIABLO, STARCRAFT and WARCRAFT gaming franchises.  Since establishing the Blizzard label in 1994, Blizzard has quickly become one of the world's most respected and popular makers of computer games, with sales in excess of $800 million since 1998. Many of Blizzard's games feature online game play over the Internet via

an online gaming service provided by Blizzard.  Over 11 million individuals actively play Blizzard's games online.

8.	In November 2004, Blizzard released World of Warcraft®, the company's most ambitious and advanced online computer game to date.  WoW is a Massively Multiplayer Online Roleplaying Game ("MMORPG"), a genre of computer game in which large numbers of players interact with each other simultaneously in a virtual persistent online world.  WoW allows players to experience the WARCRAFT universe in great detail, customizing their own experiences by participating in a variety of different activities alone or with others.

9.	Blizzard developed the WoW gaming environment through tremendous effort and at tremendous expense to the company, employing numerous game designers, artists, producers and programmers to conceive of and create a gaming experience that has thus far appealed to more than eight million players.

10.	The software code responsible for the extensive and richly detailed creative elements forming the online world of the WoW gaming environment are copyrighted works owned by Blizzard.  Blizzard has received copyright registrations in both the server and game client software code.  See Copyright Registration Numbers TXu 1-166-151, TX 5-984-004, and PA-1-247-131, attached hereto as Exhibit A.

11.	From its release of WoW in November 2004, Blizzard has made extensive use of the "World of Warcraft®" and "WoW" marks as trademarks in commerce.  Blizzard has secured federal trademark registrations for the World of Warcraft® mark at Registration Numbers 2877945 and 2972619, and has made extensive common law use of the WoW mark.

12.	Blizzard has used the "WoW' and "World of Warcraft®" marks in marketing the game on Blizzard's own promotional website, worldofwarcraft.com, in game packaging, and in advertising.  As a result, the "World of Warcraft®" and WoW marks have become distinctly associated with Blizzard and the World of Warcraft® game.

13.     World of Warcraft® allows players from around the globe to assume the roles of different characters within the game as they explore, adventure and quest across WoW's vast online world.

14.     A central objective for players of WoW is to advance their characters through the various levels recognized in the game, thereby accessing new content in the WoW gaming environment as levels increase.

15.     Leveling characters in WoW requires an investment of time and effort playing the game.

16.     World of Warcraft®, like other MMORPG games, derives revenue based on a subscription fee model.  In order to experience the WoW gaming environment, consumers must obtain a legitimate version of the WoW game client, and then make periodic payments for a subscription permitting them to continue accessing the authorized WoW servers and playing in the authorized WoW gaming environment.

17.     Unfortunately, the gaming experience of legitimate players of WoW is under near constant attack by cheaters, scammers, and other wrongdoers seeking to exploit WoW for their own illegitimate ends.  For this reason, Blizzard seeks to protect the sanctity of the WoW gaming experience through both contractual obligations and technical measures.

### The WoW End User License Agreement and Terms of Use

18.     Prior to playing WoW, users must install the game client on a personal computer. During that installation process, the game client displays a contract to the user called the World of Warcraft® End User License Agreement (the "EULA").  See EULA, attached as Exhibit B.

19.     In order to install the game client, and again before playing the game for the first time and before each update, the user must manifest assent to the EULA by scrolling through the agreement to the end and clicking on a button labeled "Accept."  The user also may decline to enter into this contract by clicking on a button labeled "Decline," at which point the game client will terminate, denying access to the user.

20.     Any use of the WoW game client that is not in accordance with the EULA is expressly prohibited.  Among other provisions, the EULA provides that users may not:

> facilitate, create or maintain any unauthorized connection to the Game or the Service…. All connections to the Game and/or the Service, whether created by the Game Client or by other tools and utilities, may only be made through methods and means expressly approved by Blizzard. Under no circumstances may you connect, or create tools that allow you or others to connect, to the Game's proprietary interface other than those expressly provided by Blizzard for public use."

21.     Blizzard only authorizes users to copy WoW into their computer's random access memory in conformity with its license agreement.

22.     The EULA provides commercially reasonable contractual protection of Blizzard's rights in and to the game client and server elements of WoW.

23.     Additionally, in order to participate in game play on Blizzard's WoW servers, users must create a user account with Blizzard.

24.     During that account creation process, and before the first game access and any update, Blizzard displays a contract to the user called the World of Warcraft® Terms of Use (the "TOU").  See TOU, attached as Exhibit C.

25.     In order to create a WoW account, the user must manifest assent to the TOU by clicking on a button labeled "Accept."  The user also may decline to enter into this contract by clicking on a button labeled "Decline," at which point the account creation process will terminate, denying access to the user.

26.     Any use of the WoW game client or access to the WoW gaming environment that is not in accordance with the TOU is expressly prohibited.

27.     Among other provisions, the TOU states that users will not "modify or cause to be modified any files that are a part of the Program or the Service."  TOU 4(B)(i).

28.     The TOU provides that users "will not … use cheats, bots, 'mods', and/or hacks, or any other third-party software designed to modify the World of Warcraft® experience…."  TOU ¶ 4(B)(ii).

29.     The TOU also prohibits the "use [of] any third-party software that intercepts, 'mines', or otherwise collects information from or through the Program or the Service."    TOU ¶ 4(B)(iii).

30.     The provisions of the TOU are designed to protect the integrity of the game by, among other things, preventing players from cheating, and thereby adversely impacting the experience of all users that play fairly.

31.     The TOU provides commercially reasonable contractual protection of Blizzard's rights in and to the game client and server elements of WoW.

## Blizzard's Technical Security Measures

32.     In order to play WoW, a user must first install and then "launch" the WoW client.

33.     When the WoW client is launched, a copy of the program is loaded into the user's own computer's random access memory.

34.     Blizzard employs a software program called Warden as a technical measure that prevents unauthorized access to WoW and restricts users from loading unauthorized copies of WoW.

35.     When users launch the WoW game client, authenticate to the WoW game server, and access the copyrighted elements of the WoW gaming environment, they must demonstrate that they are running an authorized copy of the game client.

36.     Warden enforces Blizzard's rights by running targeted scans of the user's environment for the presence and/or use of "signatures" of known unauthorized third party programs that facilitate cheating or allow the modification of the WoW interface, environment, and/or experience in any way not authorized by Blizzard.

37.     When Warden detects that a user is attempting to run an unauthorized copy of WoW, Blizzard denies that user access to the copyrighted WoW gaming environment.

38.     In order to circumvent Warden and access and run unauthorized copies of WoW in conjunction with a hack or cheat, a user running a cheat must prevent Warden from detecting it and thereby bypass its protections.

## MDY'S UNLAWFUL ACTIVITIES

39.     On information and belief, MDY operates a website located at www.wowglider.com.

40.     From the wowglider.com site, MDY sells and distributes "WoWGlider."

41.     Donnelly uses the alias "Mercury" in connection with the WoWGlider website.

42.     Donnelly also regularly uses the email address support@wowglider.com.

43.     On information and belief, under the alias Mercury, Donnelly regularly posts messages on forums located at the WoWGlider.com website, discussing use of WoWGlider and development of new versions of the program.

44.     Donnelly acknowledges on the MDY website that use of WoWGlider violates the EULA and the TOU.  See WoWGlider FAQ, attached as Exhibit D.

45.     MDY offers a free demo version of WoWGlider that permits users a few minutes of use.  To continue using the program, users must register their version of WoWGlider and purchase a product key to enable its functionality.

46.     Users must pay MDY $25 for the product key.  Users may also upgrade to an "elite" version of WoWGlider to get extra features, such as background operation and additional protection from game detection software. The elite version is sold as a subscription service for $5 per month.

47.     On information and belief, MDY has sold well over 25,000 product keys for WoWGlider and reaped substantial profits from such sale.

48.     MDY had specific knowledge that their sale and promotion of WoWGlider induced thousands of individuals to violate both the EULA and the TOU.

49.     MDY's sale of WoWGlider has caused Blizzard great harm in the direct loss of revenue from terminated users, the loss of subscription revenue from WoWGlider users availing themselves of the cheat, and from the severe damage to the goodwill of the non-cheating population of WoW users.

50.     MDY maintains complete control of all purchased WoWGlider programs by requiring that they connect to a server administered by MDY before running.  Thus, MDY has the ability to disable any copy or all copies of WoWGlider at any time.

51.     MDY intentionally designed WoWGlider to avoid detection by Warden and thereby circumvent WoW's access controls.

52.     In response to Blizzard's efforts to augment Warden's ability to prevent WoWGlider users from accessing WoW, MDY has continually modified and updated WoWGlider in order to preserve and enhance its ability to circumvent Warden.

53.     Once downloaded and enabled, WoWGlider launches WoW in WoWGlider's own separate, protected process for the purpose of making WoWGlider invisible to Warden, rather than using the authorized WoW launcher functionality.

54.     In the process of launching WoW, WoWGlider avoids Warden's technological protective measures and enables the user to access WoW while running it in WoWGlider.

55.     The copy of WoW in random access memory that is made when WoWGlider launches WoW as a subservient process is not authorized by Blizzard.

56.     But for the code in WoWGlider designed to avoid and bypass Warden, Warden would prevent users from accessing and making copies of WoW in random access memory.

57.     When running in conjunction with WoW, WoWGlider allows users to automate gameplay such that they can manipulate the WoW gaming environment for their character in violation of the EULA and the TOU, and artificially increase their economic standing and rank within the game, without so much as being present at the computer.

58.     On information and belief, Defendant Michael Donnelly is the only Member of MDY Industries LLC.

59.     On information and belief, MDY Industries LLC's address of incorporation is a home owned by Donnelly.

60.     On information and belief, MDY Industries LLC offers no products or services other than WoWGlider.

61.     On information and belief, user payment for WoWGlider software is made to a PayPal account accessed only by Michael Donnelly.

62.     On information and belief, MDY Industries LLC and Donnelly have a unity of interest and ownership such that the separate personalities of the entity and the person cease to exist.

63.     On information and belief, MDY Industries LLC acts as an alter ego for Michael Donnelly, and was created to insulate Donnelly from the legal consequences of his unlawful practices in developing, distributing, and selling WoWGlider.

## COUNT I

### Tortious Interference With Contract

64.     Blizzard realleges each and every allegation set forth in Paragraphs 1 through 63, inclusive, and incorporates them by reference herein.

65.     As described herein, before playing the game, licensed users of WoW must first assent to the EULA and the TOU, thereby creating contracts between the users and Blizzard.

66.     Blizzard's contracts with its users are valid and enforceable.

67.     WoWGlider is a third-party add-on program that enables users to cheat and collect information from WoW with little or no human participation.

68.     The EULA and TOU prohibit WoW players from using third-party add-on programs, and specifically cheat programs, in conjunction with WoW.

69.     MDY are aware of the contracts between Blizzard and its users.

70.     On information and belief, Donnelly is also aware of the Blizzard EULA and TOU by virtue of his own personal WoW account.

71.     MDY explicitly states in the WoWGlider Frequently Asked Questions that purchase and use of WoWGlider violates the TOU and subjects users to banning by Blizzard.

72.     MDY promotes and offers users a free demo version of WoWGlider and sells the full version via their website.

73.     MDY intentionally induces users of WoW to purchase and use WoWGlider in breach of their contracts with Blizzard.

74.     By inducing WoW users to breach their contracts with Blizzard, MDY intentionally interferes with the contracts between Blizzard and those users.

75.     MDY's actions were committed willfully and knowingly.

76.     MDY knowingly induced breaches with an improper motive, namely to profit from the sale of cheating software that harms the WoW game experience and which MDY knew Blizzard prohibited.

77.     As a result of MDY's actions, Blizzard has suffered damage in an amount to be proven at trial, including but not limited to loss of goodwill among WoW users, diversion of Blizzard resources to prevent access by WoWGlider users, loss of revenue from terminated users, and decreased subscription revenue from undetected WoWGlider users.

78.     MDY's intentional interference with the contracts between Blizzard and its licensed users entitle Blizzard to injunctive relief and compensatory damages, and other available relief.

### **COUNT II**

### **Contributory Copyright Infringement**

### **Under the Copyright Act, 17 U.S.C. § 501**

79.     Blizzard realleges each and every allegation set forth in Paragraphs 1 through 78, inclusive, and incorporates them by reference herein.

80.    Blizzard owns a valid copyright in the World of Warcraft® server and client software code.

81.    As the copyright owner of WoW, Blizzard maintains the exclusive right as defined in 17 U.S.C. § 106 to, <u>inter alia</u>, reproduce the copyrighted work.

82.    Users of WoW are licensees, and are permitted to copy WoW only in conformance with the EULA.

83.    When users launch WoW in connection with WoWGlider, they create unauthorized, infringing copies of WoW.

84.    The unauthorized copying of WoW made by WoWGlider users is a direct infringement of Blizzard's valid copyright.

85.    MDY, by developing and selling WoWGlider, and particularly by providing individualized key codes to paying users, knew or had reason to know that users were creating infringing copies of WoW.

86.    MDY induced, caused, or materially contributed to the infringing activity by developing the WoWGlider software and selling it to users.

87.    Because MDY knew or had reason to know of the infringing activity, and induced, caused, or materially contributed to that activity, Defendant is liable for contributory copyright infringement under the Copyright Act.

88.    MDY's continuing infringement is willful.

89.    MDY's copyright infringement under 17 U.S.C. § 501 entitles Blizzard to injunctive relief, compensatory and statutory damages, and other available relief.

**<u>COUNT III</u>**

**<u>Vicarious Copyright Infringement</u>**

**<u>Under the Copyright Act, 17 U.S.C. § 501</u>**

90.     Blizzard realleges each and every allegation set forth in Paragraphs 1 through 89, inclusive, and incorporates them by reference herein.

91.     As the valid copyright owner of WoW, Blizzard maintains the exclusive right as defined in 17 U.S.C. § 106 to, inter alia, reproduce the copyrighted work.

92.     WoWGlider users directly infringe Blizzards copyrights in WoW.

93.     MDY, by maintaining a central server of software keys for paying WoWGlider users, has the right and ability to terminate the user of WoWGlider accounts at any time.

94.     By charging prospective users of WoWGlider $25 for individualized software keys enabling its functionality, MDY derives direct financial benefit from the infringing activity.

95.     Because MDY has the right and ability to control the infringing activity and derives financial benefit from the activity, MDY is liable for vicarious copyright infringement under the Copyright Act.

96.     MDY's continuing infringement is willful.

97.     MDY's copyright infringement under 17 U.S.C. § 501 entitles Blizzard to injunctive relief, compensatory and statutory damages, and other available relief.

**COUNT IV**

**Violation of the Digital Millennium**

**Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(2) and (b)(1)**

98.     Blizzard realleges each and every allegation set forth in Paragraph 1 through 97, inclusive, and incorporates them by reference herein.

99.     WoW's Warden component is a technological measure that effectively protects Blizzard's rights as a copyright owner by restricting users' ability to make unauthorized copies of WoW.

100.     WoW's Warden component is a technological measure that effectively prevents access to the copyrighted WoW gaming environment.

101.    WoWGlider is specifically designed to avoid or bypass Warden without Blizzard's authorization.  The WoWGlider FAQ on MDY's website explicitly recognizes this function.  <u>See</u> WoWGlider FAQ, attached as Exhibit D.

102.    In creating and selling WoWGlider, MDY offers to the public, provides, or otherwise traffics in a product or technology that is primarily designed or produced for the purpose of circumventing Warden, in violation of 17 U.S.C. § 1201(a)(2)(A) and (b)(1)(A).

103.    In creating and selling WoWGlider MDY offers to the public, provides or otherwise traffics in a product on technology that has only limited commercially significant purpose or use other than to circumvent Warden.

104.    In creating and selling WoWGlider MDY offers to the public, provides or otherwise traffics in a product or technology that is marketed by MDY with their knowledge for use in circumventing Warden.

105.    MDY's acts constituting DMCA violations have been and continue to be performed without the permission, authorization or consent of Blizzard.

106.    MDY has violated Section 1201 of the DMCA willfully.

107.    MDY's conduct has caused damage to Blizzard, and has unjustly enriched MDY, in an amount to be proven at trial.

108.    Blizzard's remedy at law is not adequate.  Unless restrained by this Court, Defendant will continue to violate Section 1201 of the DMCA.  Complete protection of Blizzard's rights should include an injunction, an equitable accounting of profits, as well as statutory and actual damages and other available relief.

<u>**COUNT V**</u>

<u>**Trademark Infringement**</u>

<u>**Lanham Act, 15 U.S.C. § 1125(a)**</u>

109.    Blizzard realleges each and every allegation set forth in Paragraphs 1 through 108, inclusive, and incorporates them by reference herein.

110.    Blizzard widely uses, in interstate commerce, WoW as a mark in conjunction with its World of Warcraft® game, and the WoW mark is distinctly associated with World of Warcraft®.

111.    Due to the immense popularity of World of Warcraft®, the WoW mark is widely recognized both inside and outside the PC gaming community.

112.    MDY's use of the WoW mark both as part of the name of his WoWGlider software and in marketing on his website, is likely to cause confusion or deceive consumers as to the affiliation, connection, or association of WoWGlider with Blizzard.  Because the WoWGlider software performs only in conjunction with WoW, and because of the incorporation of the WoW mark in WoWGlider, consumers are likely to be confused about whether WoWGlider is sponsored or approved by or affiliated Blizzard, as opposed to unaffiliated and in fact prohibited by the terms of Blizzard's user agreements.

113.    MDY selected the name WoWGlider with the bad faith intent to associate the program with World of Warcraft®.

114.    MDY's use of the WoW mark in a way likely to cause confusion among consumers, constitutes trademark infringement, false designation of origin and false sponsorship under 15 U.S.C. § 1125(a)(1)(a).

115.    Blizzard's reputation, as well as the public perception of World of Warcraft®, are damaged by Defendant's actions because use of Defendant's software has a deleterious effect on the game play experience of World of Warcraft® players not using the software to cheat, in an amount to be proven at trial.

116.    MDY's actions were committed willfully and knowingly.

117.    MDY's infringement of the WoW mark entitles Blizzard to injunctive relief, compensatory and statutory damages, and other available relief.

## COUNT VI
## Unfair Competition

118.    Blizzard realleges each and every allegation set forth in Paragraphs 1 through 117, inclusive, and incorporates them by reference herein.

119.    MDY's actions as described herein comprise business conduct that is contrary to honest practice in commercial matters.

120.    As a result of MDY's actions, Blizzard has been damaged in an amount to be proven at trial.

121.    MDY's actions were committed willfully and knowingly.

122.    MDY's actions constitute unfair competition under Arizona law, and entitle Blizzard to injunctive relief, compensatory and punitive damages, and other available relief.

## COUNT VII

### Unjust Enrichment

123.    Blizzard realleges each and every allegation set forth in Paragraphs 1 through 122, inclusive, and incorporates them by reference herein.

124.    On information and belief, MDY reaped and continues to reap substantial profits from the sale and distribution of WoWGlider.

125.    Use of WoWGlider impoverishes Blizzard by altering the game balance in World of Warcraft®, damaging Blizzard's reputation with players dissatisfied with the pervasiveness of cheaters and the effect of cheating on the game, and depriving Blizzard of monthly membership revenue by enabling users to progress in the game more quickly than legitimate players.

126.    MDY developed, sold, and used the WoWGlider software with full awareness that such activities violate the Blizzard EULA and TOU, and that use by purchasers of the software would also violate the Blizzard EULA and TOU.

127.    Blizzard has no adequate legal remedy under which to recover for MDY's widespread distribution and sale of WoWGlider.

128.    Blizzard is entitled to the equitable disgorgement of MDY's unjustly received revenues from the sale of WoWGlider.

**PRAYER FOR RELIEF**

WHEREFORE, Blizzard prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, an Order:

A.    Preliminarily and permanently enjoining MDY Industries LLC and Michael Donnelly, their agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons active in concert or participation with them from: (i) infringing Blizzard's copyrighted works; (ii) violating the prohibitions on circumvention of copyright protection systems and trafficking in circumvention technology; (iii) infringing the WoW trademark; (iv) violating the EULA and TOU; and (v) encouraging or facilitating others to violate the EULA or the TOU.

B.    Requiring MDY Industries LLC and Michael Donnelly to shut down the WoWGlider.com website, to assign to Blizzard all rights and title to the wowglider.com domain name, and to stop the development, sale, and distribution of WoWGlider.

C.    Restraining MDY Industries LLC and Michael Donnelly from engaging in infringing or violative activity relating to the development, sale, and distribution of WoWGlider.

D.    Requiring MDY Industries LLC and Michael Donnelly to assign and deliver to Blizzard all copies of materials that infringe or violate any of Blizzard's rights described herein, including without limitation the source code for WoWGlider.

E.    Requiring MDY Industries LLC and Michael Donnelly to provide Blizzard with an accounting of any and all sales of products or services that infringe or violate any of Blizzard's rights described herein.

F.    Awarding Blizzard monetary relief including damages sustained by Blizzard in an amount not yet determined.

G.    Awarding Blizzard actual or statutory damages for infringement and willful infringement under 17 U.S.C. §§ 504 and 1203, and 15 U.S.C. § 1125, as appropriate.

-20-

1        H.      Awarding Blizzard its costs and attorneys' fees in this action pursuant to 17 U.S.C.

2   §§ 505 and 1203 and other applicable laws.

3        I.      Awarding such other and further relief as this Court may deem just and appropriate.

4

5

6   Dated:  February 16, 2007                    Respectfully submitted,

7

8

9                                                 /s Scott Stein
                                                  Scott Stein
10                                                SONNENSCHEIN NATH & ROSENTHAL LLP
                                                  2398 East Camelback Road
11                                                Suite 1060
                                                  Phoenix, AZ  85106-9009
12                                                Telephone:  (602) 508-3900
                                                  Facsimile:  (602) 508-3914
13

14                                                Christian S. Genetski
                                                  1301 K Street, NW
15                                                Suite 600-East Tower
                                                  Washington, DC  20005
16                                                Facsimile (202) 408-6399
                                                  Telephone (202) 408-6400
17

18                                                Attorneys for Defendants and Cross-Claimants
                                                  Blizzard Entertainment, Inc. and Vivendi Games, Inc.
19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on February 16, 2007, I electronically transmitted the attached document

3

to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of

4

Electronic Filing to the following CM/ECF registrants:

5

6       Lance C. Venable
        Joseph R. Meaney
7       Venable, Campillo, Logan & Meaney, P.C.
        1938 East Osborn Road
8       Phoenix, AZ 85016

9

10                                          /s Scott Stein_____
                                            Scott Stein

11
                                            Attorney for Defendants and Cross-Claimants
12                                          Blizzard Entertainment, Inc. and
                                            Vivendi Games, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28