| | |
|---|---|
| **IN THE UNITED STATES DISTRICT COURT**<br>**FOR THE DISTRICT OF ARIZONA** | |
| MDY INDUSTRIES, LLC, )<br>      Plaintiff/Counterdefendant )<br>      vs. )<br>BLIZZARD ENTERTAINMENT, INC., )<br>and VIVENDI GAMES, INC. )<br>      Defendants/Counterclaimants )<br>_____ )<br>BLIZZARD ENTERTAINMENT, INC., )<br>and VIVENDI GAMES, INC. )<br>      Third-Party Plaintiffs, )<br>      vs. )<br>MICHAEL DONNELLY, )<br>      Third-Party Defendant. ) | **Case No.:** CV06-02555-PHX-DGC<br><br>**BLIZZARD ENTERTAINMENT,**<br>**INC.**'S **MOTION FOR ENTRY OF**<br>**DAMAGES JUDGMENT**<br>**ON DMCA VIOLATIONS** |

In this Court's January 28, 2009 Order entered following a bench trial on the merits, the Court ruled that MDY Industries, LLC and Michael Donnelly (collectively, "MDY") were liable to Blizzard for damages for violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(2) and (b)(1). On September 28, 2008, the Court entered an Order and Stipulated Judgment on damages incurred through September 1, 2008 in the amount of $6,000,000 for Counts I-III, Blizzard's claims for

copyright infringement and tortious interference.[1]  Because the parties disagree as to the proper amount of damages for MDY's violations of the DMCA (Count IV of Blizzard's Complaint), Blizzard hereby requests that the Court award Blizzard statutory damages on its DMCA claims pursuant to 17 U.S.C. § 1203, as set forth below.

17 U.S.C. § 1203(c) provides that Blizzard may elect actual or statutory damages for MDY's violations of §§ 1201(a)(2) and 1201(b)(1).  Such election may be made "[a]t any time before final judgment is entered[.]"  17 U.S.C. § 1203(c)(3)(A).  Blizzard first evidenced its election of statutory damages in its Answer and Counterclaim,[2] and in the absence of a stipulation on DMCA damages between the parties, renews that election here.

Section 1203(c)(3)(A) provides that each violation of section 1201 results in an award of "not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just."  Although MDY has not provided a precise accounting of how many Glider licenses have been sold to date, that number is at least 120,000.[3]  Pursuant to this Court's January 28, 2009 Order, each Glider license sold constitutes a separate DMCA violation for purposes of calculating damages under § 1203(c)(3)(A).  *Sony Comp. Enter. Am., Inc. v. Filipiak*,

---

[1] On February 23, 2009, the parties submitted a second Order and Stipulated Judgment to include damages incurred between September 1, 2008 and the current date, increasing the total damages for Counts I-III to $6,500,000.  Blizzard offered to include the DMCA claims, Count IV, in this stipulated judgment and have the Order apply equally to Count IV, but MDY declined to so stipulate.  Accordingly, Blizzard brings the present motion.  *See* Affidavit of Christian Genetski, ¶ 2, attached hereto as Exhibit A.

[2] *See* Blizzard Counterclaim and Third-Party Complaint, ¶ G; *see also* Blizzard Memorandum in Support of its Motion for Summary Judgment, p. 13.

[3] MDY had sold approximately 120,000 licenses as of September 10, 2008.  *See*

406 F. Supp. 2d 1068, 1074 (N.D. Cal. 2005) (§ 1203(c)(3)(A) "authorizes a separate award of statutory damages for each device sold"). As the Court must award "not less than $200" per violation, the minimum statutory damages award for MDY's DMCA violations, assuming 120,000 licenses, is $24,000,000.

The Court's only discretion in reducing the per violation award below $200[4] requires a finding that the violations are "innocent," a standard MDY cannot meet here. Specifically, section 1203(c)(5) provides courts the discretion to consider reducing damage awards only where "the violator was not aware and *had no reason to believe* that its acts constituted a violation," and places the burden of proof on the violator for establishing innocent violation (emphasis added). Under the applicable standard, not only does MDY fail to qualify as an innocent violator, but its willful continued distribution of Glider after notice by Blizzard of its DMCA claims may entitle Blizzard to enhanced damages. *See Sony Comp. Enter. Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 967 (N.D. Cal. 2006) (court awards enhanced damages of $800 per violation for sales occurring after filing of plaintiff's suit). As this Court recognized in its January 28, 2009 Order, MDY and Donnelly facilitated the infringement and benefited financially from it, and thus cannot prove innocent infringement based solely on a lack of specific knowledge or belief that the activities in which they knowingly engaged violated the DMCA. *Universal City Studios, Inc. v. Sony Corp. of Am.*, 659 F.2d 963, 975 (9th Cir.

---

Order and Stipulated Judgment, dated September 26, 2008.

[4] *See generally, Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (in copyright context, "the court has wide discretion in determining the amount of statutory damages to be awarded, *constrained only by the specified maxima and minima*" (emphasis added)).

- 3 -

1981) (holding that "a defendant's mistake as to the legal consequences of his actions does not constitute an excuse for an infringement. It is only necessary that a copyright defendant have knowledge of the infringing activity."), *rev'd on other grounds in Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984). At a minimum, MDY had reason to believe the sale of Glider violated the DMCA from October 25, 2006, the date Blizzard informed MDY of its intention to pursue DMCA claims and demanded that MDY cease development and distribution of Glider, and on which MDY filed its declaratory judgment action. If the Court elects to limit the statutory damages to Glider sales occurring from October 26, 2006 forward and subtracts the approximately 40,000 licenses sold prior to that date, then MDY should be assessed statutory damages of $16,000,000 for the at least 80,000 licenses sold since that date.[5]

Finally, should the Court opt to exercise its discretion to further reduce the statutory damages amount, Blizzard respectfully asserts that the floor for any damages award should be the $6.5 million in damages that MDY has stipulated accurately reflects the damage to Blizzard from MDY's copyright and tort violations. In this case, the exact same underlying acts form the basis for each of Blizzard's claims, and the same harm flows from those violations, and there is no meaningful basis upon which to distinguish the damage caused by each violation. Thus, at a minimum, Blizzard requests that the Court order that the $6.5 million award in the Order and Stipulated Judgment submitted by the parties be applied equally to the DMCA claims, resulting in a separate judgment on the DMCA claims for $6.5 million.[6]

---

[5] *See* Affidavit of Christian Genetski, ¶ 3, attached hereto as Exhibit A.

[6] As noted in the proposed Order submitted herewith as Exhibit B, Blizzard

- 4 -

Dated: February 24, 2009                               Respectfully submitted,

Shaun Klein                                            /s/   Christian S. Genetski
SONNENSCHEIN NATH &                                    Christian S. Genetski
ROSENTHAL LLP                                          Shane M. McGee
2398 East Camelback Road, Ste 1060                     1301 K Street NW, Ste 600E
Phoenix, AZ 85106-9009                                 Washington, DC 20005
Telephone: (602) 508-3900                              Telephone: (202) 408-6400
Facsimile: (602) 508-3914                              Facsimile: (202) 408-6399

Attorneys for Defendants/Counterclaimants Blizzard Entertainment, Inc. and Vivendi Games, Inc.

---

recognizes that, consistent with the Order and Stipulated Judgment submitted by the parties, Blizzard shall not be entitled to double, triple, or quadruple recovery on Counts I-IV, but shall be entitled to recover the total DMCA damage award entered by the Court if Count IV is affirmed on appeal, irrespective of the outcome on appeal as to Counts I, II, and III.

# CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| Name | Email Address |
| --- | --- |
| Lance C. Venable | docketing@vclmlaw.com |
| Joseph Richard Meaney | docketing@vclmlaw.com<br>jmeaney@vclmlaw.com |
| Public Knowledge<br>Connie Jo Mableson | connie@azlawyers.com |

/s/  Christian S. Genetski