LAW OFFICES OF
VENABLE, CAMPILLO, LOGAN & MEANEY, P.C.
1938 EAST OSBORN ROAD
PHOENIX, ARIZONA 85016
TELEPHONE (602) 631-9100
FACSIMILE (602) 631 4529
E-MAIL DOCKETING@VCLMLAW.COM

Lance C. Venable (AZ Bar No 017074)
Joseph R. Meaney (AZ Bar No. 017371)
Attorneys for Plaintiff MDY Industries, LLC
and Third-Party Defendant Michael Donnelly

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **MDY INDUSTRIES, LLC,** | **Case No.: CV06-02555-PHX-DGC** |
| Plaintiff and Counterdefendant, | |
| vs. | **Response to Blizzard's Request for DMCA Damages by MDY Industries, LLC and Michael Donnelly** |
| **BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC.,** | **The Honorable David G. Campbell** |
| Defendants and Counterclaimants, | |
| **BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC.,** | |
| Third-Party Plaintiffs, | |
| vs. | |
| **MICHAEL DONNELLY, an individual** | |
| Third-Party Defendant. | |

The DMCA provides the Court with considerable discretion in deciding whether to award statutory damages; and if so, how to fairly calculate those damages.[1]  The DMCA also gives the Court the power to remit the entire damage award for a violator

---

[1] 17 U.S.C. § 1203(b)("court <u>may</u> award damages under" the statutory damage provision of subsection (c)(3)(emphasis supplied)); 17 U.S.C. § 1203(c)("…as the court considers just.")

1

who did not know and had no reason to believe his actions violated the DMCA.[2]

For the reasons set forth in the attached memorandum, Donnelly and MDY Industries, LLC ask the Court to remit any DMCA damages it might elect to award.

## **Memorandum of Points and Authorities**

Damage awards are unambiguously disfavored in cases of first impression under the DMCA.[3]  When enacting the DMCA, not only did Congress give courts the unilateral power to reduce damage awards, Congress gave courts the unilateral power to "remit the total award":

> The court in its discretion may reduce or remit the total award of damages
> in any case in which the violator sustains the burden of proving, and the
> court finds, that the violator was not aware and had no reason to believe
> that its acts constituted a violation.[4]

In order to remit the total award, the Court is not required, as one might expect, to apply an objective standard.  Instead, the Court's inquiry centers on what the violator knew or had reason to know, namely (1) was the violator aware that his acts constituted a violation, and (2) did the violator have reason to believe that its acts constituted a violation.[5]

Granting courts the ability to remit the total award is important.  The DMCA is a difficult-to-follow, multi-tiered, cross-referencing statutory scheme that creates an uncertain line between proper and improper conduct – at least as applied to the facts of this case.  An uncertain statutory line is unfair to someone who is only deemed a violator in hindsight.[6]  An uncertain line also promotes an undesirable chilling effect on

---

[2] 17 U.S.C. § 1203(c)(5).

[3] *See, id.; also, compare id. with* § 1203(c)(4), which triples damage awards for repeat offenders.

[4] *Id.*

[5] *Id.*

[6] *Cf., Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F.Supp. 841, 853 (N.D.Cal.1979)(citations omitted), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d

utilitarian, time-saving software writers.[7]  Granting courts the ability to remit the total

award in appropriate cases provides a way to mitigate both unwanted effects.

Without the unilateral ability to reduce or remit damage awards, adjudged DMCA

violators who had no reason to know that certain acts violated the DMCA could be

saddled with millions of dollars in potentially non-dischargeable debt.    This is

particularly unfair when the acts giving rise to the DMCA violation are, on their face,

acts in which we want society to participate.[8]  We want companies to write new software,

and particularly, clever software that enables a computer to take direction and carry out

mundane tasks, which in turn allow us more time to participate in less mundane tasks.

Fortunately, Congress made sure to provide a judicial escape valve for instances where

the violator did not know (and had no reason to know) that a given course of action

would turn out, in hindsight, to be a DMCA violation.

<u>Michael Donnelly did not know, and had no reason to know, that his actions
violated the DMCA</u>

In its findings of fact, the Court expressly found that Donnelly did not know his

actions constituted any violation of copyright law.[9]  While the Court had no reason to

---

1256 (9th Cir.1981), cert. denied, 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 135 (1982)("The
generality of the Act's prohibition, the often uncertain line between proper and improper conduct,
and the social interest in not deterring economically useful conduct by the imposition of
excessive risks — all of which the Supreme Court recognized in *United States Gypsum* — make
it appropriate to limit personal liability to cases of participation in inherently wrongful conduct.")
[7] As it is, software writers are already chilled by the fear of being ensnared by artfully drafted
conditions precedent ambiguously placed in third party adhesion contracts. *Cf, Murphy Tugboat*,
("[W]here the conduct proscribed is difficult to distinguish from conduct permitted and indeed
encouraged, as in the antitrust context, the excessive caution spawned by a regime of strict
liability will not necessary [*sic,* necessarily] redound to the public's benefit") quoting, *United
States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).
[8] Like, for example, writing interactive, utilitarian, "hands-free" software from scratch.
[9] Order (Document 108) at 12, lines 22-23 ("Donnelly did not believe that the creation or
distribution of Glider violated the copyright laws.")

3

determine at the time whether Donnelly had "reason to know" of a DMCA violation, some findings suggest that it would have. For example, the Court found:

1. "Donnelly did not copy any of Blizzard's code, nor does Glider seek to replicate the WoW game."[10]
2. "These contracts [EULA and TOU] did not at the time expressly prohibit bots. They did prohibit cheats and hacks, but Donnelly did not view Glider as a cheat or a hack because it did not modify any WoW code."
3. "Donnelly's argues, with some persuasive force, that he should not be held personally liable when he could not reasonably be expected to know that the Ninth Circuit applied copyright law to the copying of software into RAM."[11]
4. The Court references e-mail from Donnelly about bots, but the e-mail says nothing about DMCA violations.
5. In the Court's recap of events on pages 12-13, the Court never references anything to suggest that Donnelly had even heard of the acronym DMCA before this lawsuit was filed.

Donnelly testified at trial that even though Blizzard was aware of Glider for some 18 months, Blizzard never asserted DMCA liability (or any liability for that matter relating to the use of Glider software) until Blizzard showed up at Donnelly's breakfast table with a lawsuit in hand in October of 2006.

Even after October of 2006, liability under the DMCA was not clear − even to Blizzard. Blizzard's first DMCA theory was denied on summary judgment. Had Blizzard known how to apply the DMCA to the undisputed facts of this case, Blizzard could have obtained summary judgment months ago. At trial in January, Blizzard conceded that the parties never disputed the facts; it was the application of those facts that even Blizzard "struggled to sort out."[12] In the end, Blizzard refined a previously unsuccessful theory, relying terms like "non-literal element," which is not even a phrase found in the DMCA itself, and combined them with its "symphony of computers"

---

[10] *Id.* at 12, lines 23-24.
[11] *Id.* at 18, lines 2-4.
[12] Blizzard's closing argument before the Court on January 9, 2009.

concept to ultimately convince the Court that DMCA liability should attach. Given that Blizzard itself "struggled to sort out" DMCA liability, and succeeded only on its second try using the abstract theory it did, the Court should remit any damage award. It would be unfair to impose damages when liability was only apparent in hindsight.

Fortunately, our legislative branch provided the power for this Court to avoid this unfairness. The Court can grant whatever statutory damages it thinks are appropriate and then remit the total award under 17 U.S.C. 1203(c)(5). To do otherwise, would serve no social benefit, would not benefit Blizzard,[13] and would unfairly sanction Donnelly, who did not and could not have foreseen that his Glider software would give rise to liability under the DMCA.

Respectfully submitted on March 10, 2009.

**Venable, Campillo, Logan & Meaney, P.C.**

By   /s/Joseph R. Meaney
          Lance C. Venable SBN 017074
          Joseph R. Meaney SBN 017371
          1938 East Osborn Road
          Phoenix, Arizona 85016
          Tel: 602-631-9100
          Fax: 602-631-9796
          E-Mail docketing@vclmlaw.com

*Attorneys for Plaintiff MDY Industries, LLC and Third-Party Defendant Donnelly*

---

[13] Blizzard already holds joint and several damage awards against MDY and Donnelly for 6.5 million dollars and can derive no cumulative benefit from DMCA damages, absent reversal of both the copyright and tortious interference findings on appeal. And if copyright and tortious interference get reversed, a remaining DMCA damage award would be even more unfair for the reasons set forth herein.

**CERTIFICATE OF SERVICE**

☒     I hereby certify that on March 10, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| Name | Email Address |
|---|---|
| Christian Genetski, Esq. | cgenetski@sonnenschein.com |
| Scott Jeremy Stein, Esq. | sstein@sonnenschein.com<br>wanderson@sonnenschein.com |
| Shane McGee, Esq. | smcgee@sonnenschein.com |
|  |  |

☐     I hereby certify that on _____, I served the attached document by FIRST CLASS MAIL on the following, who are not registered participants of the CM/ECF System:

| Name | Physical or Email Address |
|---|---|
|  |  |
|  |  |

s/  Joseph R. Meaney

- 1 -