**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MDY Industries, LLC, | No. CV-06-2555-PHX-DGC |
| Plaintiff/Counterdefendant, | **ORDER AND PERMANENT INJUNCTION** |
| vs. | |
| Blizzard Entertainment, Inc.; and Vivendi Games, Inc., | |
| Defendants/Counterclaimants. | |
| Blizzard Entertainment, Inc.; and Vivendi Games, Inc., | |
| Third-Party Plaintiffs, | |
| vs. | |
| Michael Donnelly, | |
| Third-Party Defendant. | |

This case concerns the World of Warcraft computer game ("WoW") and a software program known as Glider that plays WoW for its owners while those owners are away from their computer keyboards. MDY Industries, Inc. ("MDY"), the owner and distributor of Glider, sought a declaratory judgment that Glider does not infringe rights owned by Blizzard Entertainment, Inc. and Vivendi Games, Inc. (collectively, "Blizzard"), the owners and distributors of WoW. Dkt. #5. Blizzard filed a counterclaim and a third-party complaint against Michael Donnelly, the founder of MDY. Blizzard asserted seven claims: tortious

1  interference with contract, contributory copyright infringement, vicarious copyright
2  infringement, violation of the Digital Millennium Copyright Act ("DMCA"), trademark
3  infringement, unfair competition, and unjust enrichment. Dkt. #10.

4  The Court granted in part the parties' summary judgment motions. The Court held
5  MDY liable to Blizzard for tortious interference with contract, contributory copyright
6  infringement, and vicarious copyright infringement. The Court granted summary judgment
7  to MDY on the portion of Blizzard's claim based on the DMCA that applied to Blizzard's
8  game client software code. The Court also granted summary judgment in favor of MDY on
9  Blizzard's unfair competition claim. Dkt. #82.

10  Blizzard filed a motion for a permanent injunction on its tortious interference and
11  copyright infringement claims. Dkt. #84. The Court denied the motion without prejudice.
12  Dkt. #91.

13  Following this ruling, Blizzard dismissed its trademark infringement and unjust
14  enrichment claims and the parties stipulated that Blizzard would recover $6,000,000 in
15  damages from MDY on the tortious interference and copyright infringement claims if any
16  one of those claims is affirmed on appeal. Dkt. ##94-95. The parties agreed that the Court
17  should hold a bench trial to decide the remaining claims under the DMCA, whether Donnelly
18  is personally liable to Blizzard, and whether Blizzard is entitled to a permanent injunction.
19  Dkt. ##92, 96.

20  The bench trial was held on January 8 and 9, 2009. Dkt. ##100-02. The Court issued
21  an order setting forth its findings of fact and conclusions of law on January 28, 2009. The
22  Court concluded that MDY is liable under the DMCA, that Donnelly is personally liable for
23  MDY's tortious interference, copyright infringement, and DMCA violations, and that
24  Blizzard is entitled to a permanent injunction. Dkt. #108.

25  As requested by the Court (*see id.* at 22), the parties have filed memoranda addressing
26  three issues: (1) the scope of the injunction, (2) whether the injunction should be stayed
27  pending appeal, and (3) what bond should be imposed for Blizzard's protection pending
28  appeal. Dkt. ##109, 111.

## I. Scope of the Injunction.

Injunctive relief "is historically 'designed to deter, not punish[.]'" *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 62 (1975) (citation omitted). In issuing a permanent injunction, "a district court should only include injunctive terms that have a common sense relationship to the needs of the specific case, and the conduct for which a defendant has been held liable." *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1126-27 (C.D. Cal. 2007) (citing *NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435 (1941)). "'[B]lanket injunctions to obey the law are disfavored.'" *Id.* at 1226 (citation omitted).

MDY has been found liable for tortious interference with the contract between Blizzard and WoW users, contributory and vicarious infringement of Blizzard's copyrights in WoW, and violations of the DMCA. *See* Dkt. ##82, 108. The Court will enjoin MDY from engaging in acts "which are the same type and class as [the] unlawful acts which the [C]ourt has found to have been committed" by MDY. *Express Publ'g Co.*, 312 U.S. at 435; *see Rondeau* 422 U.S. at 62 (injunctive relief was designed "to permit the court 'to mould each decree to the necessities of the particular case'") (citation omitted); *Aluminum Workers Int'l Union v. Consol. Aluminum Corp.*, 696 F.2d 437, 446 (6th Cir. 1982) ("the scope of relief should be strictly tailored to accomplish only that which the situation specifically requires"). To ensure that the injunctions are specifically tailored, separate injunctions are set forth at the end of this order for (1) the copyright and DMCA claims and (2) the tortious interference claim.

## II. Stay of Injunction Pending Appeal.

MDY seeks a stay of the injunctions pending appeal. Dkt. #111. The Court has discretion to grant a stay pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. Such a stay "is an extraordinary remedy that should be granted sparingly." *Ariz. Contractors Ass'n, Inc. v. Candelaria*, No. CV07-02496-PHX-NVW, 2008 WL 486002, at *1 (D. Ariz. Feb. 19, 2008) (citations omitted); *see In re GTI Capital Holdings, LLC*, No. 03-07923-SSC, 2008 WL 961112, at *6 (D. Ariz. Bankr. Apr. 4, 2008). MDY "carries a heavy burden to demonstrate that the stay is warranted." *McCammon v. United States*, 584 F. Supp. 2d 193,

197 (D.D.C. 2008); *see Winston-Salem/Forsyth County Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, C.J.). MDY must show either (1) "'a probability of success on the merits and the possibility of irreparable injury'" or (2) "'that serious legal questions are raised and that the balance of hardships tips sharply in its favor.'" *Golden Gate Rest. Ass'n v. City & County of S.F.*, 512 F.3d 1112, 1115-16 (9th Cir. 2008) (citations omitted); *see Stormans Inc. v. Selecky*, 526 F.3d 406, 408 (9th Cir. 2008); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The Court must also consider whether a stay will harm Blizzard and whether the public interest supports the issuance of a stay. *See id.*

### A. Stay of the Copyright and DMCA Claims.

#### 1. Likelihood of Success or Serious Questions Raised on Appeal.

MDY and Donnelly assert that serious questions exist concerning the correctness of the Court's ruling on the copyright and DMCA claims, and even attach draft articles and third-party commentary suggesting that the Court's rulings are incorrect. Dkt. #111-3. The Court fully recognizes that these issues are debatable and that reasonable minds can disagree on whether the copyright and DMCA claims were decided correctly. *See* Dkt. #108 at 22. The Court has applied binding Ninth Circuit law on the scope of a license (Dkt. #82 at 6-12), whether purchasers of WoW software "own" the software for purposes of 17 U.S.C. § 117(a) (Dkt. #82 at 13-16), and whether copying to RAM constitutes "copying" for purposes of the Copyright Act (Dkt. #82 at 6 & n. 4). The Court recognizes that the Ninth Circuit may choose to reconsider its position on some or all of these issues during the appeal of this case. The Court therefore concludes that the appeal will raise serious questions concerning the copyright and DMCA claims.

#### 2. Balance of Hardships.

The Court must decide whether the balance of hardships tips sharply in favor of MDY and Donnelly. *See Golden Gate Rest. Ass'n*, 512 F.3d at 1115-16. The Court concludes that it does. Although Blizzard spends approximately $83,000 per month combating Glider and other bots, MDY and Donnelly note that Blizzard makes approximately $1,500,000 per month from WoW. The quantifiable injury to Blizzard from staying the injunction will thus

1 amount to less than one-tenth of one percent of its monthly revenue. MDY and Donnelly, by contrast, would likely be put out of business by the permanent injunction. Even if the permanent injunction ultimately is eliminated on appeal, MDY and Donnelly likely will have lost all of their market share to competitors during the duration of the appeal and will be unable to regain their business. Given the serious questions to be raised on appeal by the copyright and DMCA claims, the Court concludes that the hardships to be suffered by MDY and Donnelly from a permanent injunction substantially outweigh the hardships to be suffered by Blizzard if the injunction is stayed pending appeal. *See In re Hayes Microcomputer Prods., Inc. Patent Litig.*, 766 F. Supp. 818, 823 & n.4 (N.D. Cal. 1991) (balance of hardships favored stay of injunction where the defendants "could conceivably be put out of business before an appeal is even heard").

### 3. Public Interest.

As the Court previously has noted, public interest would seem to favor preservation of Blizzard's copyright interests and termination of the exploitation of WoW by MDY and Donnelly. Dkt. #82 at 24-25. On the other hand, the Court of Appeals may change its position on pivotal legal issues in this case, resulting in a different outcome. Given that possibility, the public interest would seem to favor preservation of the status quo pending resolution of the appeal. The Court concludes that this factor slightly favors Blizzard, but is not sufficient to overcome the serious questions and balance of hardships that favor entry of a stay. The Court therefore concludes that the permanent injunction based on the copyright and DMCA violations should be stayed pending appeal.

### B. Tortious Interference.

The law clearly provides that MDY and Donnelly may be enjoined from engaging in tortious interference. *See* Restatement (Second) of Torts § 766, cmt. u; *Graham v. Mary Kay Inc.*, 25 W.W.3d 749, 755 (Tex. Ct. App. 2000) ("Injunctive relief is an appropriate remedy when a claim of tortious interference is involved."); *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 436 n.21 (Pa. 1978) ("'It is well settled that equity will act to prevent unjustified interference with contractual relations.'") (citation omitted); *Walt*

*Peabody Advertising Serv. v. Pecora*, 393 F. Supp. 328, 333 (W.D. Ky. 1975) ("[I]t has been held that the loss of a contractual customer to a third party who induces the breach of the contractual relationship constitutes injury for which injunctive relief shall issue."); *Special Purpose Accounts Receivable Cooperative Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1106 (S.D. Fla. 2000) (injunctive relief appropriate if the plaintiffs established tortious interference otherwise "the plaintiff would be compelled to bring a claim against the defendants each time they interfere with [plaintiffs'] protected rights in the future"); *see also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1022 (9th Cir. 1985) ("'An injunction may be framed to bar future violations that are likely to occur.'") (citation and brackets omitted).

MDY and Donnelly do not dispute that injunctive relief may be entered on the tortious interference claim, nor do they identify serious questions that will be raised by their tortious interference appeal. They argue instead that serious questions exist with respect to the copyright and DMCA claims and that "[w]ithout a copyright and DMCA violation, Blizzard could not meet the elements for tortious interference with contract." Dkt. #111 at 5 n.14. The Court does not agree.

To establish tortious interference, Blizzard was required to show that a valid contract exists between Blizzard and its customers, that MDY and Donnelly know of the contract, that MDY and Donnelly intentionally and improperly interfere with the contract thereby causing a breach, and that Blizzard is damaged as a result. *See* Dkt. #82 at 22 (citations omitted). MDY and Donnelly conceded most of these elements – that there is a valid contract between Blizzard and its customers, that they know of the contract, and that the use of Glider breaches the contract. Nor did MDY and Donnelly genuinely dispute that they intentionally interfere with the contract by promoting the use of Glider and that Blizzard is damaged as a result. *Id.* at 22-23. The key question, then, is whether MDY's and Donnelly's actions are improper as a matter of law. In concluding that they are, the Court did not rely on the fact that Glider includes copying of Blizzard's software to RAM (copyright infringement) and circumvents Warden (DMCA violations). Rather, the Court found MDY and Donnelly's conduct to be

improper because (1) they profit from the sale of Glider knowing that its use constitutes a direct breach of Blizzard's legitimate and substantial contract rights, (2) their interference causes Blizzard to lose customers and revenue, and (3) the use of Glider by WoW users upsets the carefully balanced competitive environment of WoW. *Id.* at 23-26; *see* Dkt. #108 at 15-16. Thus, even if MDY and Donnelly have raised serious questions regarding their copyright and DMCA liability, they have not identified such questions on their tortious interference liability. Nor have they made any effort to show that they are likely to succeed on the merits of their appeal of the tortious interference claim.

Because MDY and Donnelly have not shown a probability of success on the merits or that their appeal will raise serious questions concerning the tortious interference claim, they cannot meet the requirements for a stay pending appeal. *See Golden Gate Rest. Ass'n*, 512 F.3d at 1115-16. The Court need not address the hardship or public interest aspects of the stay analysis. *See In re Marrama*, 345 B.R. 458, 473 (Bankr. D. Mass. 2006); *see also First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1385 (9th Cir. 1987).

### C. Stay Summary and Injunction Bond.

The Court concludes that MDY and Donnelly have established their right to a stay of the permanent injunction regarding the copyright and DMCA claims, but not the permanent injunction on the tortious interference claim. The Court recognizes that the separate treatment of these issues likely will have little practical effect. The permanent injunction on the tortious interference claim will foreclose MDY and Donnelly's continued marketing, distribution, and support of Glider for use in WoW. For this reason, the Court concludes that Blizzard is not likely to be harmed by the stay of the copyright and DMCA injunction, and no bond is necessary.

### III. Bond for Stay of Damages.

The parties stipulated to a $6,500,000 judgment against MDY and Donnelly on the tortious interference and copyright infringement claims. Dkt. ##112, 114. Pursuant to Rule 62(d), MDY and Donnelly may obtain a stay of that judgment pending appeal by posting a supersedeas bond.

1    A full bond generally is required under Rule 62(d) because the purpose of the bond "is to secure the appellees from a loss resulting from the stay of execution." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987); *see Nat'l Labor Relations Bd. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988). "'In unusual circumstances, however, the district court in its discretion may order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery.'" *Athridge v. Iglesias*, 464 F. Supp. 2d 19, 23 (D.D.C. 2006) (quoting *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980)); *see Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1991) ("[W]e have held that the district court may permit security other than a bond.") (citing *Int'l Telemeter v. Hamlin Int'l Co.*, 754 F.2d 1492, 1495 (9th Cir. 1985)). Where the "'judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden, the court is free to exercise its discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would equal protection to the judgment creditor.'" *In re Wymer*, 5 B.R. 802, 806 (B.A.P. 9th Cir. 1980) (citation and alteration omitted).

MDY and Donnelly cannot post anything close to a full bond amount of $6,500,000 and therefore request an alternative form of security for the stay of the monetary judgment pending appeal. MDY and Donnelly propose that they be required to put all but the necessary funds to operate MDY for fixed overhead and salaries in an escrow account monthly and report both monthly income and expenses to Blizzard during the pendency of the appeal. Dkt. #111 at 8. Donnelly also testified at trial that while he has not set aside a separate reserve to satisfy the monetary judgment, he has not spent any profits from the sale of Glider since this litigation began.

The Court concludes that an alternative form of security is appropriate. The appeal will raise serious questions concerning the copyright and DMCA claims and MDY and Donnelly have shown that their "'financial condition is so impaired that [they] would have difficulty in securing a supersedeas bond.'" *In re Wymer*, 5 B.R. at 806 (citation omitted).

The Court will require MDY and Donnelly to place all profits obtained from the sale of Glider or other operations of MDY, including all monies set aside by MDY and Donnelly since the commencement of this suit, in an escrow account approved by Blizzard. Such funds shall remain in escrow pending further order of the Court. MDY shall report its monthly income and expenses to Blizzard during the pendency of the appeal. Within 30 days after all appeals being exhausted, the parties shall file a joint status report regarding the appropriate disposition of the escrow funds.

**IT IS ORDERED:**

1. <u>Copyright and DMCA Permanent Injunction</u>. Having found MDY Industries, LLC ("MDY") and Michael Donnelly liable to Blizzard Entertainment, Inc. and Vivendi Games, Inc. ("Blizzard") for contributory and vicarious copyright infringement and for violation of the Digital Millennium Copyright Act ("DMCA"), the Court permanently enjoins MDY and Michael Donnelly from engaging in contributory or vicarious copyright infringement and from violating the DMCA with respect to Blizzard's copyrights in and rights to the World of Warcraft game ("WoW"). MDY and Donnelly are enjoined from (a) marketing, selling, supporting, distributing, or developing Glider for use in connection with WoW; (b) infringing, or contributing to the infringement of, Blizzard's copyrights in WoW software; (c) circumventing, or contributing to the circumvention of, Blizzard's protection mechanisms that control access to the dynamic, nonliteral elements of WoW, including but not limited to the circumvention of Warden; and (d) operating or supporting any server that authenticates copies of Glider for use in WoW or provides Glider with information about the memory addresses WoW uses to store its game state information. This permanent injunction shall apply with the same force and effect to any future release of the World of Warcraft Game Client in which Blizzard has a financial or other interest, which interest is known to MDY or Donnelly. **The permanent injunction set forth in this paragraph shall be stayed pending appeal.**

2. <u>Tortious Interference Permanent Injunction</u>. Having found MDY and Michael Donnelly liable to Blizzard for tortious interference with contract, the Court permanently

enjoins MDY and Michael Donnelly from tortiously interfering with the End Use License Agreement ("EULA") and Terms of Use Agreement ("TOU") that Blizzard enters into with its WoW customers. MDY and Donnelly are enjoined from (a) marketing, selling, supporting, distributing, or developing Glider for use in connection with WoW; or (b) operating or supporting any server that authenticates copies of Glider for use in WoW or provides Glider with information about the memory addresses WoW uses to store its game state information. This permanent injunction shall apply with the same force and effect to any future release of the WoW Game Client in which Blizzard has a financial or other interest, which interest is known to MDY or Donnelly. This injunction shall remain in effect so long as Blizzard's EULA and TOU clearly prohibit the use of Glider in WoW.

3. <u>Bond Requirements for Stay of the Money Judgment</u>. MDY and Michael Donnelly shall place all present and future profits obtained from the sale of Glider or other operations of MDY, including all monies set aside by MDY and Donnelly from the commencement of this suit, in an escrow account approved by Blizzard. Such funds shall remain in escrow pending further order of the Court. MDY shall report its monthly income and expenses to Blizzard during the pendency of the appeal. Within 30 days after all appeals being exhausted, the parties shall file a joint status report regarding the appropriate disposition of the escrow funds.

4. The Court shall retain jurisdiction to hold proceedings and to enter further orders as may be appropriate to implement or enforce the provisions of this Order and Permanent Injunction.

DATED this 10th day of March, 2009.

_____
David G. Campbell
United States District Judge