| | |
|---|---|
| SONNENSCHEIN NATH & ROSENTHAL LLP<br>Shaun Klein (AZ Bar No. 018443)<br>2398 East Camelback Road, Suite 1060<br>Phoenix, AZ 85016-9009<br>Facsimile (602) 508-3914<br>Telephone (602) 508-3900 | Christian S. Genetski (*Pro Hac Vice*)<br>Shane M. McGee (*Pro Hac Vice*)<br>1301 K Street, NW, Suite 600 East<br>Washington, DC 20005<br>Facsimile (202) 408-6399<br>Telephone (202) 408-6400 |

Attorneys for Defendants Vivendi Games, Inc. and Blizzard Entertainment, Inc.

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| MDY INDUSTRIES, LLC,<br><br>    Plaintiff and Counter-Claim<br>    Defendant<br><br>vs.<br><br>BLIZZARD ENTERTAINMENT, INC.,<br>and VIVENDI GAMES, INC.<br><br>    Defendants and<br>    Counter-Claim Plaintiffs.<br><br>BLIZZARD ENTERTAINMENT, INC.,<br>and VIVENDI GAMES, INC.<br><br>    Third-Party Plaintiffs,<br><br>vs.<br><br>MICHAEL DONNELLY,<br><br>    Third-Party Defendant. | **Case No.:** CV06-02555-PHX-DGC<br><br>**MOTION TO COMPEL<br>COMPLIANCE WITH<br>THE COURT'S MARCH 10,<br>2009 ORDER**<br><br>The Honorable David G. Campbell |

## Introduction

Plaintiffs Blizzard Entertainment, Inc. and Vivendi Games, Inc. ("Blizzard") hereby respectfully request this Court to enter an order compelling Defendants MDY Industries, LLC ("MDY") and Michael Donnelly ("Donnelly") to deposit certain funds presently located in various accounts belonging to MDY and Donnelly into escrow pursuant to this Court's March 10, 2009 order (the "Order"). Dkt. No. 116.

**Background**

After granting summary judgment in Blizzard's favor, this Court entered a $6,000,000 million stipulated damages judgment on September 29, 2008 for Counts I, II, and III of Blizzard's counterclaims and third-party complaint. Dkt. No. 95. Following trial on the remaining claims, this Court entered an order in Blizzard's favor on two of its DMCA claims, and requested briefing as to entry of a permanent injunction, possible stay of that injunction, and what bond should be imposed to protect Blizzard's rights pending appeal. Dkt. No. 108 at 22. Following that order, on March 3, 2009, the parties agreed to an increased $6,500,000 million judgment to reflect damages incurred since September 29, 2008. Dkt. 114.

On March 10, 2009, this Court entered an Order addressing, among other issues, the proper security MDY and Donnelly should post to stay execution of the judgment pending appeal under Federal Rule of Civil Procedure 62(d). The Court ordered that in lieu of a full bond for the $6.5 million judgment MDY and Michael Donnelly "place all present and future profits obtained from the sale of Glider or other operations of MDY, including all monies set aside by MDY and Donnelly from the commencement of this suit, in an escrow account approved by Blizzard" and to "report its monthly income and expenses to Blizzard during the pendency of the appeal." Dkt. No. 116 at 9, 10. In the order, the Court stated that, "Donnelly also testified at trial that while he has not set aside a separate reserve to satisfy the monetary judgment, he has not spent any profits from the sale of Glider since this litigation began." *Id.* at 8. The Court also retained jurisdiction to resolve any disputes related to enforcement of the order. *Id.* at 10.

Pursuant to the Order, Blizzard's counsel sent a financial disclosure form to counsel for MDY and Donnelly on March 24, 2009. (Ex. A, Ltr. fr. S. McGee to P. Rupprecht & L. Venable dated 3/24/2009). MDY and Donnelly responded with completed financial disclosure forms on April 2, 2009. (Ex. B, Ltr. fr. P. Rupprecht to S. McGee dated April 2, 2009). In that response, Donnelly disclosed a personal investment account that he stated was funded with special distributions paid to him by MDY. *Id.* In addition, Donnelly disclosed the following personal accounts that were funded with his salary from MDY, which he acknowledged was paid solely from revenues generated by Glider sales (*Id.* & Ex. C, Letter from Philip Rupprecht to S. McGee dated April 21, 2009):[1]

- A checking account at DSFCU;
- A savings account at DSFCU;
- A money market account at DSFCU; and
- An E*trade investment account.[2]

MDY revealed that it has:

- Three checking accounts at Chase Bank with balances of $24,653.63; $65,796.17, and $2,489.00;
- Two savings accounts with balances of $100.20 and $3,822.15; and

---

[1] Donnelly also disclosed one additional personal savings account, and an automobile titled in his name for which he paid cash. During subsequent negotiations, MDY's counsel noted that the car was paid for with salary received from MDY, but that the savings account was funded with proceeds from the sale of real property purchased prior to the creation of MDY. (*See* Ex. C).

[2] Donnelly claims that he funded approximately half of the balance of this account before beginning work at MDY, and the remaining half with salary from MDY. (Ex. C).

- 3 -

- A PayPal account with $ 2,015.58.

*Id.* To date, MDY and Donnelly have placed only the proceeds of Donnelly's personal investment account into escrow.

Blizzard believes that MDY and Donnelly have construed the Court's March 10, 2009 Order too narrowly and that the funds in certain MDY and Donnelly accounts, as well as the title for the car Donnelly purchased with funds generated by Glider sales, should be escrowed. The parties have attempted to resolve their differences without success, and thus Blizzard requests that the Court issue an Order clarifying whether the funds described herein should be escrowed under the Court's March 10, 2009 Order.

## **Argument**

In the course of the parties' negotiations, MDY and Donnelly have taken the position that *only* the funds in Donnelly's personal investment account should be escrowed, arguing that "the Order makes reference in several places to Mr. Donnelly's testimony about profits being set aside during the pendency of the case. In that testimony, Mr. Donnelly was referring to an investment account which he still has and over which there is no dispute. Therefore, our view is that the Order requires Mr. Donnelly to transfer the investment account only to the designated escrow agent." (Ex. D, Letter from P. Rupprecht to S. McGee dated March 27, 2009). MDY and Donnelly contend that the funds in the additional MDY and Donnelly accounts are not profits from the Glider business, claiming that "profits" are only "extraordinary distributions in the past" paid to Donnelly, and that all funds from such distributions were put in Donnelly's investment account. (Ex. E, April 29, 2009 Email from P. Rupprecht to S. McGee). As to its accounts, MDY claims that because the Court's order contemplates future

- 4 -

operations, it must have "some level of cash reserves" and thus Blizzard is not entitled to monies deposited into the MDY accounts that have not yet been distributed.[3] (Ex. D). As to Donnelly's other personal accounts (and car title), Donnelly asserts that accounts funded from "salary" paid to him by MDY should not be subject to escrow because those funds also do not constitute "profits" of MDY. (Ex. E). Blizzard respectfully submits that MDY's arguments should be rejected as contrary to this Court's order because they place form over substance and provide MDY and Donnelly with complete control over whether funds derived from the sale of Glider -- the unlawful activity enjoined by this Court -- constitute "profit" and thus are subject to escrow. The Order requires MDY and Donnelly to secure Blizzard's interest in its judgments against them in order to stay execution of the judgment, and MDY and Donnelly's interpretation of the Court's Order, if correct, would subvert that interest.

MDY's narrow construction of the meaning of "profits" is inconsistent with this Court's order and creates the potential for manipulation. Profit is the "excess of the selling price of goods over their cost." Merriam Webster's Collegiate Dictionary 992 (11th ed. 2007). Money is profit unless it is being used to pay a cost of Glider sales—in other words, an expense that has been accrued (such as rent through the end of its lease). If the money cannot be allocated to an expense, or cost, then it is profit. Instead of accepting the ordinary definition of "profit," MDY has taken a position that, if accepted, would place the determination of whether money is "profit" solely within its control.

---

[3] MDY's request for a stay of this Court's injunction pending was denied by the Ninth Circuit Court of Appeals on April 21, 2009. (Ex. F, Order dated April 21, 2009). Accordingly, by MDY's own admission, all MDY operations have been shut down as it is enjoined from selling its only product. (Ex. G, Donnelly forum posting).

First, Donnelly's attempt to distinguish funds based on the account into which he elected to deposit them is untenable. Accepting MDY and Donnelly's argument that only funds that Donnelly chose to place in his investment account are "profits" would allow MDY and Donnelly to control whether money constitutes "profit" simply by choosing not to deposit it into that financial account. This Court, however, did not limit the money MDY must deposit into escrow to a specific account Donnelly controls. Instead, the order focuses on the source of funds by requiring deposit of "all profits obtained from the sale of Glider or other operations of MDY, *including* all monies set aside by MDY and Donnelly since commencement of this suit..." Dkt. No. 116 at 9 (emphasis added). In fact, this Court's order recognizes that no specific account contains the monies at issue: "Donnelly also testified at trial that while *he has not set aside a separate reserve* to satisfy the monetary judgment he has not spent any profits from the sale of Glider since this litigation began." Dkt. No. 116 at 8. Thus, if the funds are profits of MDY's business, MDY and Donnelly must deposit them into escrow regardless of the account in which they currently reside, unless they are being used to pay a current operating expense.

Second, this Court should reject MDY and Donnelly's argument that profits are only those amounts paid to Mr. Donnelly as irregular or "extraordinary" distributions, rather than salary, because it too would allow MDY and Donnelly to exercise control over whether money constitutes profit simply by whether they paid, or pay, Donnelly a "salary" rather than having paid, or paying, the *same* money as a "distribution." Donnelly is the sole individual partner of MDY, and has identified his salary from MDY as the source of the money in the checking, savings, money market and E*trade accounts

- 6 -

described above. He claims that this money is "salary" rather than "profit," but cannot escape the fact that if MDY did not pay its controlling partner a salary, then that same amount would have been distributed to Donnelly (or retained by MDY) as profit. Accordingly, there is no practical difference for purposes of this Court's order between money MDY paid to Donnelly as a "salary" and money paid to Donnelly as a "distribution." Accepting Donnelly's interpretation of this Court's order would place the determination of whether money is profit *solely* in MDY and Donnelly's hands by allowing them to convert "profits" into "operating expenses" merely by declining to distribute those profits to Donnelly or by choosing to pay those profits to Donnelly as a "salary." Donnelly's ability to pick and choose which of his funds must secure Blizzard's judgment pending appeal is particularly inappropriate given the fact that Blizzard has obtained a $6.5 million judgment against Donnelly personally. As a result, all Glider revenues Donnelly identified as being paid to him by MDY—via salary or a distribution—are profit and should be placed in escrow, as should the title to the automobile Donnelly purchased with money he was paid by MDY.

Likewise, accepting MDY's representations that the funds in its operating accounts do not constitute profit would render this Court's order nearly meaningless with regard to MDY's accounts, as MDY could prevent money from becoming profit simply by retaining it in its operating account and not distributing it to Donnelly (except via "salary")—a choice entirely within its (and Donnelly's) control. Blizzard agrees that under the ordinary definition of "profit" MDY may retain some cash in order to pay expenses MDY had accrued as of the date of the Order, provided it submits documentation supporting those expenses. At this stage, however, those expenses should

be limited. The Ninth Circuit has denied MDY's request to stay the permanent injunction pending appeal. (Ex. F). MDY has stated publicly that it would be shutting down following the ruling. (Ex G). Nonetheless, MDY claims that it must retain over $90,000 in its operating accounts to pay expenses. It is unclear what justification MDY has for retaining any amount given that MDY will soon cease to exist. As such, the full amount contained in MDY's operating accounts should be placed into escrow.

Even prior to the Ninth Circuit's ruling, however, much of MDY's disclosed expenses of $39,690 per month appeared to be discretionary and not currently accrued. For instance, the largest amount of monthly expenses was $29,350.00 in salaries. Ex. B. A large portion of that salary amount ($12,800) is Donnelly's own $153,600 annual salary, which for the reasons stated above should be treated as profit for purposes of this Court's order. *Id.* Donnelly's salary aside, MDY has no product line other than Glider, which it cannot, under this Court's order, continue to sell. MDY thus has no need to spend money on employees to maintain a product it is unable to sell. Indeed, MDY has acknowledged publicly that it is for all intents and purposes defunct.

Blizzard is mindful of the consequences of terminating employees and winding down businesses in the current economic climate, but this Court should not allow MDY to subvert this Court's order by distributing Glider profits that this Court has ordered placed into escrow to protect Blizzard's rights. If MDY wishes to continue to fund salaries and other expenses, it may do so by obtaining financing or capital from sources other than the sale of Glider—such as bank financing or venture capital funds—but as the Court's order makes clear it cannot do so by re-appropriating profits.

# CONCLUSION

For the foregoing reasons, Blizzard respectfully requests that this Court order MDY to make an accounting of unpaid, but presently owed expenses, and deposit into escrow the balance of the MDY accounts at Chase Bank and PayPal after subtracting those expenses. Likewise, Blizzard respectfully requests that the Court order Michael Donnelly to deposit the balance of his DSFCU checking, savings, money market accounts and half of his E*trade financial account into escrow, and to place the title to his automobile in escrow. In the alternative, Blizzard asks this Court to provide it with a writ of execution under Federal Rules of Civil Procedure 70 so that it may compel Chase, Paypal, DSFCU and E*trade Bank to transfer those funds in to escrow.

Dated: May 12, 2009                                          Respectfully submitted,

Shaun Klein
SONNENSCHEIN NATH &
ROSENTHAL LLP
2398 East Camelback Road, Ste 1060
Phoenix, AZ 85106-9009
Telephone: (602) 508-3900
Facsimile: (602) 508-3914

/s/ Christian S. Genetski
Christian S. Genetski
Shane M. McGee
1301 K Street, NW, Ste 600E
Washington, DC 20005
Facsimile (202) 408-6399
Telephone (202) 408-6400

Attorneys for Defendants Blizzard Entertainment, Inc. and Vivendi Games, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| Name | Email Address |
|---|---|
| Lance C. Venable | docketing@vclmlaw.com |
| Joseph Richard Meaney | docketing@vclmlaw.com<br>jmeaney@vclmlaw.com |
| Public Knowledge<br>Connie Jo Mableson | connie@azlawyers.com |

/s/  Christian S. Genetski