SONNENSCHEIN NATH & ROSENTHAL LLP
Shaun Klein (AZ Bar No. 018443)
2398 East Camelback Road, Suite 1060
Phoenix, AZ 85016-9009
Facsimile (602) 508-3914
Telephone (602) 508-3900

Christian S. Genetski (*Pro Hac Vice*)
Shane M. McGee (*Pro Hac Vice*)
1301 K Street, NW, Suite 600 East
Washington, DC 20005
Facsimile (202) 408-6399
Telephone (202) 408-6400

Attorneys for Defendants Vivendi Games, Inc. and Blizzard Entertainment, Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| MDY INDUSTRIES, LLC, <br><br> Plaintiff and Counter-Claim Defendant <br><br> vs. <br><br> BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC. <br><br> Defendants and Counter-Claim Plaintiffs. | **Case No.:** CV06-02555-PHX-DGC <br><br> **REPLY IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH THE COURT'S MARCH 10, 2009 ORDER** |
| BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC. <br><br> Third-Party Plaintiffs, <br><br> vs. <br><br> MICHAEL DONNELLY, <br><br> Third-Party Defendant. | The Honorable David G. Campbell |

Plaintiff Blizzard Entertainment, Inc. ("Blizzard") hereby respectfully replies to the opposition of Defendants MDY Industries, LLC ("MDY") and Michael Donnelly ("Donnelly") to Blizzard's motion to compel the deposit of certain funds presently located in various accounts belonging to MDY and Donnelly into escrow pursuant to this Court's March 10, 2009 order (the "Order"). Dkt. No. 116.

Most of MDY's argument focuses on whether this Court intended for it to be able to operate its business pending appeal. MDY's question is too narrow. Blizzard agrees that the Court's Order contemplates MDY potentially continuing to function as a business. Blizzard believes, however, that the Order contemplates MDY's continued operation as dependent on MDY's revenues and expenses from *non-Glider related endeavors*. The Court was well aware at the time it ordered funds to be placed in to escrow that MDY had a limited amount of funds remaining and that it could not continue to operate unless it found new sources of revenue. In briefing on whether this Court should enjoin MDY from selling Glider, MDY and Donnelly argued that—without reference to the amount of the bond—"if the Court enjoins MDY from marketing or selling Glider, MDY will go out of business within a short time thereafter." MDY Industries, LLC & Michael Donnelly's Brief Regarding Permanent Injunctive Relief, Dkt. 111 at 6. Likewise, MDY revealed that it did not have sufficient funds to operate for long if it failed to develop new revenue streams, stating that MDY had almost $40,000 a month in expenses and neither MDY nor Donnelly could afford a $1,000,000 bond "or anything close to that figure" *Id.* at 8; Decl. of Michael Donnelly ¶ 14, Ex. A to Dkt. 111. Thus, Blizzard contends that the Order's provisions regarding the reporting of revenues and expenses are meant to permit MDY and Donnelly to avoid placing operating expenses attributable to new revenue streams into escrow, but should not allow MDY or Donnelly to shield profits earned by Glider sales from escrow merely by continuing to operate a business with no viable product lines or sources of income and distributing those profits as "salaries."

In fact, MDY and Donnelly's interpretation of the Court's order is seemingly the only reason that Donnelly has not chosen to liquidate MDY and distribute the operating account to himself or his employees as profit. As MDY itself admits, it only has "has approximately $40,000.00 remaining in its operating account," and $39,690 a month in expenses. Response at 7; Dkt. 111 at 8 n.25. Regardless of this Court's ruling on Blizzard's motion, MDY only appears able to sustain operations for another month. At the same time, MDY has no known viable product lines or revenue streams. A company with no viable product lines and no (known) prospects of additional funding to develop new product lines has little reason to continue to spend $39,690 per month and every reason to liquidate the business and pay out the remaining funds as profits to its partners. The only logical reason to continue to operate is so that Mr. Donnelly and MDY's employees can collect $29,350 in salary that, under MDY and Donnelly's interpretation of this Court's order, Blizzard cannot place into escrow to protect its $6.5 million judgment.

Blizzard has addressed most of the remaining arguments in MDY's and Donnelly's response in its initial motion to compel compliance, and thus limits the remainder of its reply to the single issue of correcting MDY's misstatement of the factual record regarding the liquidation of Donnelly's personal investment account.[1] MDY and Donnelly claim that Blizzard "forced MDY to liquidate the investment account and place the funds in escrow, rather than allowing Donnelly to assign the title to the investment

---

[1] Blizzard assumes that the misstatement was the result of a miscommunication between Mr. Rupprecht, MDY's corporate counsel, and Mr. Venable, MDY's litigation counsel. Nonetheless, because MDY's brief was inaccurate on this point, Blizzard feels compelled to set the record straight.

account into escrow." Response at 8. To the contrary, Blizzard expressed initial flexibility on that issue when Donnelly first raised it. More significantly, as the correspondence between the parties demonstrates, Blizzard then relayed to Donnelly's counsel Mr. Rupprecht that the escrow agent, not Blizzard, rejected the title transfer notion. Mr. Rupprecht subsequently informed Blizzard that Donnelly had dropped the issue and elected to liquidate the accounts.[2]

On March 24, 2009, Shane McGee, counsel for Blizzard, wrote to Philip R. Rupprecht, counsel for MDY in its business affairs regarding the procedure for placing money into escrow. Exhibit A, to Blizzard's Mot. to Compel Compliance, Ltr. from S. McGee to P. Rupprecht dated March 24, 2009. Blizzard stated that the *escrow company*—not Blizzard—had demanded that the investment account be liquidated:

> "Please note that we raised the issue of transferring Mr. Donnelly's present investment account holdings into escrow with the escrow company, which informed us that it could not accept such a transfer and that the holdings would need to be liquidated and the cash then placed into escrow."

Ex. A at 2. Three days later, on March 27, 2009, Mr. Rupprecht, replied and stated *without objection* that MDY and Donnelly had agreed to liquidate the investment account:

> "[A]lthough we raised the possibility of transferring the securities held in Mr. Donnelly's investment account to the escrow agent, *sale of securities is no longer a concern.* Mr. Donnelly has issued instructions to his broker to sell all of the

---

[2] MDY points out that had the accounts not been liquidated, they would have a greater value today. MDY and Donnelly offer no explanation, however, for why Blizzard would take any action that would knowingly reduce the amount of money it will recover from MDY and Donnelly if it is successful in defending this Court's ruling on appeal, or how anyone could have known that the market was on the precipice of recovering some of its losses at the time Donnelly liquidated the personal investment account.

- 4 -

> investments within the next day or two so that the entire investment account will be converted to cash which can then in turn be transferred to escrow."

Exhibit 1, Ltr. from P. Rupprecht to S. McGee, dated March 27, 2009.

The factual record is thus clear. The escrow company demanded liquidation, and MDY and Donnelly complied without objection. MDY's allegations that Blizzard is to blame for the loss in value is inconsistent with the factual record and should be ignored.

Dated: June 11, 2009                                           Respectfully submitted,

Shaun Klein
SONNENSCHEIN NATH &
ROSENTHAL LLP
2398 East Camelback Road, Ste 1060
Phoenix, AZ  85106-9009
Telephone:  (602) 508-3900
Facsimile:  (602) 508-3914

/s/ Christian S. Genetski
Christian S. Genetski
Shane M. McGee
1301 K Street, NW, Ste 600E
Washington, DC  20005
Facsimile (202) 408-6399
Telephone (202) 408-6400

Attorneys for Defendants Blizzard Entertainment, Inc. and Vivendi Games, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| Name | Email Address |
|---|---|
| Lance C. Venable | docketing@vclmlaw.com |
| Joseph Richard Meaney | docketing@vclmlaw.com<br>jmeaney@vclmlaw.com |
| Public Knowledge<br>Connie Jo Mableson | connie@azlawyers.com |

/s/  Christian S. Genetski