LAW OFFICES OF
VENABLE, CAMPILLO, LOGAN & MEANEY, P.C.
1938 EAST OSBORN ROAD
PHOENIX, ARIZONA 85016
TELEPHONE (602) 631-9100
FACSIMILE (602) 631 4529
E-MAIL DOCKETING@VCLMLAW.COM

Lance C. Venable (AZ Bar No 017074)
Joseph R. Meaney (AZ Bar No. 017371)
Attorneys for Plaintiff MDY Industries, LLC
and Third-Party Defendant Michael Donnelly

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **MDY INDUSTRIES, LLC,**<br><br>Plaintiff and Counterdefendant,<br><br>vs.<br><br>**BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC.,**<br><br>Defendants and Counterclaimants, | Case No.: CV06-02555-PHX-DGC<br><br>**Motion to Vacate the DMCA Section of the Permanent Injunction against MDY**<br><br>**The Honorable David G. Campbell** |
| **BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC.,**<br><br>Third-Party Plaintiffs,<br><br>vs.<br><br>**MICHAEL DONNELLY, an individual**<br><br>Third-Party Defendant. | |

The Court must vacate the DMCA section of its permanent injunction. Anything less would be inconsistent with the Ninth Circuit's Opinion.

As the Ninth Circuit explained, MDY has never been a copyright infringer.[1] This newly-minted law of the case means that MDY is once again entitled to safe harbor for its

---

[1] *MDY Industries, LLC v. Blizzard Entertainment, Inc.* et al., --- F.3d ----, at 47, 2010 WL 5141269 (9th Cir. 2010)

1

§1201(a)(2) violation of the DMCA.  Under section 1201(f), the DMCA provides safe harbor for a defined subset of §1201(a)(2) violators.  Violators who are also copyright infringers are not eligible.[2]  Because the Court declared MDY a copyright infringer at summary judgment, the safe harbor could not protect MDY until the Ninth Circuit reversed.

Once the Ninth Circuit changed the law of the case by holding that MDY was never a copyright infringer, §1201(f) again offers safe harbor.  As described more fully below, safe harbor under §1201(f) applies here because MDY was never a copyright infringer and because MDY's (a)(2) violation arose from circumvention "for the purpose of enabling interoperability" between Glider and World of Warcraft ("WoW").[3]  If MDY is not liable under the DMCA despite its (a)(2) violation, the Court must vacate the DMCA section of its permanent injunction.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     MDY could not have raised §1201(f) at trial because §1201(f) was not available as a safe harbor once the Court declared MDY a copyright infringer at summary judgment.**

MDY initiated this suit as a declaratory judgment action to establish that its Glider sales do not infringe any of Blizzard's rights, including any rights under the DMCA.[4]  In its motion for summary judgment, MDY did not, and had no obligation to, raise §1201(f).

---

[2] *See,* 17 U.S.C. § 1201(f).
[3] *See id.*
[4] Amended Complaint, Dkt. #5.

2

Blizzard could have raised the §1201(f) issue at summary judgment, but it did not. Instead, Blizzard expressly sought summary judgment only on the anti-trafficking portions of the DMCA, specifically §1201(a)(2) and §1201(b)(1).[5] The Court granted partial summary judgment on the §1201(a)(2) and §1201(b)(1) issues, and conducted a trial on the remaining DMCA issues.[6]

Because the Court declared MDY a copyright infringer at summary judgment, that ruling became the law of the case.[7] And § 1201(f) precludes a copyright infringer from protection under the §1201(f) safe harbor.[8] Thus, MDY could not have raised §1201(f) at trial. As a result, the safe harbor under §1201(f) was not available as a remaining DMCA issue at trial.[9] And even if MDY could have raised §1201(f) at trial, the Court's trial decision lost any preclusive effect once the Ninth Circuit vacated it and remanded for "further proceedings consistent with [its] opinion."[10]

In addition, the Ninth Circuit expressly stated that its opinion was limited to

---

[5] See Blizzard's Motion for Summary Judgment, Dkt. #39, at 10-14.
[6] Summary Judgment Order, Dkt. #82 at 26-27.
[7] *A & A Concrete, Inc. v. White Mountain Apache Tribe*, 781 F.2d 1411, 1418 (9th Cir. 1986), *cert. denied*, 476 U.S. 1117 (1986) ( "Under the law of the case doctrine, a court is precluded from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case"); *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993)(abuse of discretion to ignore law of case, even by implication, absent specific circumstances).
[8] *See,* 17 U.S.C. § 1201(f).
[9] *Id.* at 26.
[10] *See, MDY Industries*, LLC, --- F.3d ----, at 47; *see also, Ornellas v Oakley,* 618 F.2d 1351, 1356 (9th Cir. 1980)("a reversed or dismissed judgment cannot serve as the basis for disposition on the ground of *res judicata* or collateral estoppel."); *accord*, *United States v. Williams*, 904 F.2d 7,8 (7th Cir. 1990)("[W]hen a conviction is vacated, the effect is to nullify the judgment entirely and place the parties in position of no trial having taken place at all.")

review of actual trial court rulings.[11] Given that neither party raised §1201(f) at summary judgment, and that MDY could not have raised it at trial, the Ninth Circuit had no opportunity to review §1201(f) directly. Although MDY urged the Ninth Circuit to reach §1201(f) under the doctrine of *in pari materia* or via the *Chamberlain/Lexmark* line of cases, the Ninth Circuit declined. Instead, the Ninth Circuit expressly stated that its opinion did not reach the §1201(f) issue because neither party had raised it below.[12] Thus, the Ninth Circuit left §1201(f) for this Court to decide on remand.[13]

Against this procedural backdrop, now is the time for the Court to consider §1201(f). Not only did MDY have no opportunity to assert its protection under §1201(f) between summary judgment and the Ninth Circuit reversal, but this Court has yet to consider the applicability of §1201(f). Given the controlling law of this case, the Court can only conclude that MDY has no liability under the DMCA. Even though the Ninth Circuit held that MDY violated §1201(a)(2), something MDY cannot challenge here, §1201(f) provides safe harbor for MDY's §1201(a)(2) violations.

**II.  When a circumvention device is used to enable interoperability without copyright infringement, the plain language of § 1201(f) excludes liability under § 1201(a)(2).**

Under §1201(f), a person may circumvent a protection measure and distribute the circumvention means if the circumvention's purpose is to enable an independent software

---

[11] *See*, *MDY Industries, LLC,* --- F.3d ----, at 9.
[12] *See, id.*, footnote added to Section V(E)(2) on February 17, 2011.
[13] *U.S. v. Cote*, 51 F.3d 178, 181-82 (9th Cir. 1995)(on remand, the trial court decides any matters left open by the mandate from the appellate court.)

program to interoperate with another program, and doing so does not infringe a copyright:

> Notwithstanding the provisions of subsections (a)(2) and (b), a person may develop and employ technological means to circumvent a technological measure, or to circumvent protection afforded by a technological measure, … for the purpose of enabling interoperability of an independently created computer program with other programs, if such means are necessary to achieve such interoperability, *to the extent that doing so does not constitute infringement under this title*.[14]
>
> …
>
> The information acquired through the acts permitted under paragraph (1), and the means permitted under paragraph (2), may be made available to others if the person referred to in paragraph (1) or (2), as the case may be, provides such information or means solely for the purpose of enabling interoperability of an independently created computer program with other programs, *and to the extent that doing so does not constitute infringement under this title* or violate applicable law other than this section.[15]

"Interoperability" is defined in § 1201(f)(4) as the ability of a computer program to exchange and use information.

Congress spoke directly as to the critical importance of third parties overcoming technological measures that prevent software they create from interoperating with other programs without fear of being liable under § 1201(a):

> Achieving interoperability in the consumer electronics environment will be a critical factor in the growth of electronic commerce. Companies are already designing operating systems and networks that connect devices in the home and workplace. In the Committee's view, manufacturers, consumers, retailers, and professional servicers should not be prevented from correcting an interoperability problem or other adverse effect resulting

---

[14] 17 U.S.C. § 1201(f)(2) (emphasis added).
[15] 17 U.S.C. § 1201(f)(3) *(emphasis added)*.

> from a technological measure causing one or more devices in the home or in a business to fail to interoperate with other technologies.[16]
>
> …
>
> … with our Committee's encouragement, the conferees explicitly stated that makers or servicers of consumer electronics, telecommunications, or computing products who took steps solely to mitigate a playability problem (whether or not taken in combination with other lawful product modifications) shall not be deemed to have violated either section 1201(a) or section 1201(b). Without giving them that absolute assurance, we felt that the introduction of new products into the market might be stifled, or that consumers might find it more difficult to get popular legitimate products repaired.[17]

Additionally, the Senate Judiciary Committee report on the DMCA explains the policy underlying Section 1201(f). It states that this exception was "intended to allow legitimate software developers to continue engaging in certain activities *for the purpose of achieving interoperability* to the extent permitted by law prior to the enactment of this chapter" and that "[t]he purpose of this section is to foster competition and innovation in the computer and software industry."[18]

Thus, the plain language of the § 1201(f), as well as the congressional intent pertaining to the statute, support the conclusion that by circumventing a protection measure to enable two software programs to work together without violating the Copyright Act a person does not violate the DMCA even if the person is liable under § 1201(a).

---

[16] 144 Cong. Rec. E2138 (daily ed. Oct. 13, 1998) (statement of Rep. Bliley).
[17] *Id*.
[18] S. Rep. 105-190, at 32 (1998) (emphasis added).

### III. MDY's Glider software falls under the § 1201(f) exception.

A violator of §1201(a)(2) must satisfy two elements before the safe harbor of §1201(f) attaches: (1) the violator cannot infringe any copyrights, and (2) the circumvention that gave rise to the (a)(2) violation must have been for the purpose of enabling an independent software program to interoperate with another program. Neither element is open to dispute here.

With respect to the first prong, the Ninth Circuit has ruled that MDY's Glider software does not infringe or facilitate an infringement of Blizzard's copyrighted works.[19] With respect to the second, it is beyond dispute that Glider is independently created software for interoperable use with another software program, World of Warcraft (WoW). In fact the Ninth Circuit recognized that MDY developed Glider for no other purpose than to interoperate with WoW and that Glider has no commercial use independent of WoW.[20] Indeed, as the Court acknowledged, when Blizzard launched Warden "MDY responded by modifying Glider to avoid detection" so that Gilder could continue to operate with WoW.[21] Furthermore, Blizzard never offered, nor can it offer any evidence to refute MDY's sworn statement that it "continuously updates Glider's ability to avoid detection from Warden only because MDY must maintain Glider's interoperability with WoW."[22] Hence, MDY's Glider software falls under the

---

[19] *See, MDY Industries, LLC,* --- F.3d ----, at 10-19, 47.
[20] *See, id.* at 39 ("Indeed, Glider has no function other than to facilitate the playing of WoW").
[21] *See, id.* at 7.
[22] Donnelly Aff. ¶ 38, as referenced by Blizzard in its Responses to MDY's Statement of Disputed Facts. *See*, Dkt. #71, ¶140 at 5-6.

interoperability exception of § 1201(f)(2) and (3).

The Ninth Circuit affirmed that MDY violated §1201(a)(2). Notwithstanding this violation, this Court must vacate its injunction without further delay because §1201(f) provides MDY safe harbor under the DMCA.

Respectfully submitted on April 19, 2011,

**Venable, Campillo, Logan & Meaney, P.C.**

By   /s/Lance C. Venable
  Lance C. Venable SBN 017074
  Joseph R. Meaney SBN 017371
  1938 East Osborn Road
  Phoenix, Arizona  85016
  Tel: 602-631-9100
  Fax: 602-631-9796
  E-Mail docketing@vclmlaw.com

  *Attorneys for Plaintiff MDY Industries, LLC and Third-Party Defendant Donnelly*

**CERTIFICATE OF SERVICE**

☒  I hereby certify that on April 19, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| Name | Email Address |
|---|---|
| Christian Genetski, Esq. | christian@zwillgen.com |
|  |  |

☐  I hereby certify that on _____, I served the attached document by FIRST CLASS MAIL on the following, who are not registered participants of the CM/ECF System:

| Name | Physical or Email Address |
|---|---|
|  |  |

s/  Lance C. Venable

- 1 -