ZWILLINGER GENETSKI LLP
Christian S. Genetski (*Pro Hac Vice*)
1705 N St NW
Washington, DC 20036
Facsimile (202) 706-5298
Telephone (202) 296-3585

*Attorneys for Defendants Vivendi Games, Inc.
and Blizzard Entertainment, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| MDY INDUSTRIES, LLC, | Case No.: CV06-02555-PHX-DGC |
| Plaintiff and Counter-Claim Defendant | |
| vs. | **Opposition to Motion to Vacate Permanent Injunction** |
| BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC. | |
| Defendants and Counter-Claim Plaintiffs. | The Honorable David G. Campbell |
| BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC. | |
| Third-Party Plaintiffs, | |
| vs. | |
| MICHAEL DONNELLY, | |
| Third-Party Defendant. | |

**INTRODUCTION**

MDY's motion to vacate the permanent injunction imposed under 17 U.S.C. § 1201(a)(2) hinges on a nonsensical contention—that enforcing the judgment on a claim they *lost on appeal* would be "inconsistent" with the Ninth Circuit's opinion. On the contrary, the Ninth Circuit spoke, in no uncertain terms, to the precise issue

1    raised by MDY here when it held: "We affirm the district court's entry of a
2    permanent injunction against MDY to prevent future § 1201(a)(2) violations." *MDY*
3    *Indus., LLC v. Blizzard Entmt., Inc.,* 629 F.3d 928, 954 (9th Cir. 2010) *as amended*
4    *on denial of rehearing by* 2011 WL 538748 (9th Cir. Feb. 17, 2011) ("*MDY*").
5    Under the rule of mandate doctrine, this Court is bound to sustain the injunction it
6    granted and the Ninth Circuit affirmed.
7         Further, MDY's purported basis for disregarding the rule of mandate (that
8    MDY has a § 1201(f) defense) was *also* explicitly addressed, and rejected, by the
9    Ninth Circuit. *MDY*, 629 F.3d at 954 n.19. Beyond even the specific affirmance of
10   the injunction, this secondary ruling is now also the law of the case binding this
11   Court.
12        Finally, even accepting MDY's bizarre interpretation of the law of the case
13   doctrine, MDY's *own motion* plainly demonstrates that the Ninth Circuit correctly
14   deemed their 1201(f) argument waived. Specifically, MDY acknowledges that
15   "neither party raised § 1201(f) at summary judgment…" (MDY Mot. at 4:1-2). That
16   admission is fatal. This Court had not held that MDY was a copyright infringer prior
17   to ruling on the parties' cross motions for summary judgment, and MDY's failure to
18   raise its (meritless[1]) § 1201(f) argument at that time precludes it from doing so now,
19   after the DMCA issues have been fully litigated through summary judgment, a bench
20   trial, cross-appeals, and finally a petition for panel rehearing that yielded an amended
21   opinion specifically addressing MDY's prior failures to raise the affirmative defense.
22        In short, the DMCA case against MDY is over. The appellate court has spoken,
23   and MDY has abandoned further appellate review to an *en banc* or higher Court.
24   Accordingly, the Court should deny MDY's frivolous motion, affirm the permanent

---

[1] Although MDY's motion is clearly barred by the rule of mandate and law of the case, for the sake of preserving its substantive arguments on the § 1201(f) issue, Blizzard addresses the issue in brief in Section III herein. As that discussion shows, MDY's choice not to assert § 1201(f) at any prior point in the proceedings was a rational one, as MDY plainly cannot claim it is entitled to the § 1201(f) defense.

- 2 -

injunction, and order MDY to show cause why it should not be required to pay Blizzard's attorneys' fees and costs incurred in responding to this motion.[2]

## ARGUMENT

I. The Rule of Mandate Compels Entry of a Permanent Injunction Against MDY on the § 1201(a)(2) Claims.

The rule of mandate doctrine provides as follows:

> When a case has been once decided by this court on appeal, and remanded to the [district court], whatever was before this court, and disposed of by its decree, is considered as finally settled. The [district court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.... But the [district court] may consider and decide any matters left open by the mandate of this court....

*United States v. Thrasher,* 483 F.3d 977, 981-982 (9th Cir. 2007) (citing *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255-56 (1895)).  The Ninth Circuit addressed the permanent injunction against MDY unequivocally, stating: "We affirm the district court's entry of a permanent injunction against MDY to prevent future § 1201(a)(2) violations." *MDY*, 629 F.3d at 954.  As the quoted language makes clear, the issue of entry of the permanent injunction was not left open.[3]  It was affirmed.  Accordingly, under long settled law, the rule of mandate means that this Court court cannot review or revise the Ninth Circuit's affirmance of the permanent injunction, it may only execute it.  Given the Ninth Circuit's clear direction, even if

---

[2] Blizzard did not oppose MDY filing a motion requesting oral argument after it had already filed its motion to vacate, but respectfully submits that MDY's substantive motion is plainly foreclosed by controlling law and thus that no oral argument is necessary.

[3] Any suggestion that the Ninth Circuit "left open" the entry of the injunction against MDY under § 1201(a)(2) is absurd.  The Ninth Circuit's opinion made clear which issues it remanded for determination by this Court, such as Michael Donnelly's personal liability under § 1201(a)(2). *MDY*, 629 F.3d at 958 n.25.

an argument somehow existed that MDY had not had a previous opportunity to raise (*not* the case here), this Court would have no discretion to entertain it or disturb the injunction. As such, this Court must dismiss MDY's motion and immediately enter the permanent injunction *against* it and allow Blizzard to begin enforcing its judgment.

II.     MDY Waived Any Defense or Argument Under § 1201(f).

   A. The Ninth Circuit's Rejection of MDY's § 1201(f) Argument is Law of the Case.

MDY's contention that entry of the permanent injunction would be "inconsistent" with the Ninth Circuit's opinion is preposterous given that the appellate court not only affirmed entry of the § 1201(a)(2) judgment, but explicitly rejected the *exact argument* MDY posits here for excusing its liability. Following the Ninth Circuit's issuance of its opinion, MDY petitioned the panel for rehearing, claiming that the Ninth Circuit had "overlooked or misapprehended a critical subpart in 17 U.S.C. § 1201…" that MDY had not previously cited, discussed, or argued either in this Court or on appeal, namely § 1201(f). The Ninth Circuit addressed this argument and amended the opinion to state explicitly that:

> For the first time in its petition for rehearing, MDY raises the applicability of Section 1201(f) and the question whether Glider is an "independently created computer program" under that subsection and thus exempt from the coverage of Section 1201(a). Because this argument was not raised to the district court or presented in the parties' briefs on appeal, we decline to reach it. With this amendment, the plaintiffs-appellants' petition for panel rehearing is DENIED. No further petition for rehearing will be entertained.[4]

Thus, the Ninth Circuit has already made clear that rejecting the § 1201(f) defense and affirming § 1201(a)(2) liability are entirely consistent. It is MDY's

---

[4] *MDY*, 629 F.3d at 954 n. 19. MDY then filed its now-withdrawn petition for rehearing *en banc*, in which it argued that the panel opinion wrongly decided that MDY had waived the 1201(f) issue. (Petition for Rehearing En Banc, Ninth Circuit Dkt. No. 72; March 3, 2011).

- 4 -

requested relief that is patently inconsistent with the Ninth Circuit's opinion. More significantly, the Ninth Circuit's rejection of MDY's argument binds this Court as the law of the case. "A trial court may *not,* however, reconsider a question decided by an appellate court. 'When matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court.'" *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986); *Insurance Group Comm. v. D. & R.G.W. R.R.,* 329 U.S. 607, 612 (1947). Only the *en banc* court of the Ninth Circuit had the authority to revisit the panel's determination of the § 1201(f) issue, which MDY seemingly acknowledged in its subsequently withdrawn petition challenging the panel's waiver determination. Having withdrawn the petition, the issue is foreclosed.

### B. MDY Waived the § 1201(f) Defense Even Under its Own Distorted View of the Law of the Case.

Undeterred by long-standing precedent and unbound by logic, MDY seeks to avoid the obvious result of the Ninth Circuit's decision by offering its own bizarre, and unsupported, construction of the "law of the case" doctrine. Under its novel theory, MDY posits that it should be permitted to raise an issue now if it "could not have raised [it] at trial," and specifically asserts that this Court's determination of the copyright issue at summary judgment somehow relieved it of its responsibility to assert the 1201(f) defense as an alternative basis of relief at trial (despite the appellate court's ruling to the contrary). The argument is moot. Even if a hypothetical litigant could benefit from this dubious proposition, MDY cannot.

MDY had numerous opportunities both before and after this Court held it was a copyright infringer to raise the 1201(f) argument and did not. MDY's insincerity in contending otherwise is underscored both by the record on appeal—where MDY demonstrated it was well aware it could argue in the alternative for outcomes dependent on reversal of the copyright decision—and worse by MDY's own admission in the present motion that it neglected to raise the issue at summary judgment, before any determination had been made on the copyright or DMCA

- 5 -

issues.

Had § 1201(f) offered MDY a viable defense, it could and should have raised it at each of the following stages of the proceedings. When it did not, it waived the argument.

**MDY failed to plead 17 U.S.C. § 1201(f) as an affirmative defense.** Failure to plead an affirmative defense results in waiver. Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense"); *Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 819 (9th Cir. 2004) ("Failure to plead an affirmative defense therefore results in a waiver of that defense.")[5] Courts have uniformly treated § 1201(f) as an affirmative defense, and thus MDY's failure to plead it in response to Blizzard's counterclaims results in waiver. *Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, 381 F.3d 1178, 1204 (Fed. Cir. 2004) ("§ 1201(f) is an affirmative defense"); *Davidson & Associates v. Jung*, 422 F.3d 630, 642 (8th Cir. 2005) (treating § 1201(f) as an affirmative defense).

**MDY failed to raise § 1201(f) in its motion for summary judgment or in response to Blizzard's motion for summary judgment.** MDY is correct that "[i]n its motion for summary judgment, MDY did not, and had no obligation to, raise §1201(f)." Although not obligated to raise any issue, MDY is bound by the clearly established consequences of that choice. Failure to raise an argument or affirmative defense on summary judgment results in waiver. *See Heffelfinger v. Elec. Data Sys. Corp.*, 580 F. Supp. 2d 933, 966 (C.D. Cal. 2008); *Resek v. City of Huntington Beach,* 41 Fed.Appx. 57, 58 (9th Cir. July 1, 2002) (Unpub. Disp.) ("[F]ailure to raise

---

[5] "It is a frequently stated proposition of *virtually universal acceptance* by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver to that defense and its exclusion from the case...." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278 (3d ed.2009) (emphasis added); *see Brannan v. U.S. Student Aid Funds, Inc.,* 94 F.3d 1260, 1266 (9th Cir.1996)

1   an issue in opposition to summary judgment can constitute waiver," citing *Taylor v.*
2   *Sentry Life Ins. Co.,* 729 F.2d 652, 655-56 (9th Cir.1984)); *Reliance Ins. Co. v.*
3   *Doctors Co.,* 299 F.Supp.2d 1131, 1154 (D.Haw.2003) ("Failure to raise issues in
4   opposition to summary judgment functions as a waiver"). At summary judgment, the
5   issue of infringement was open and subject to cross-motions for summary judgment
6   by the parties. If § 1201(f) were a viable issue, it was ripe. MDY waived § 1201(f)
7   by not raising it.
8   ***MDY failed to offer any evidence at trial on the DMCA claims, even as a***
9   ***proffer, supporting an affirmative defense under § 1201(f).*** It is black letter law
10  that issues abandoned before the district court are waived. *Harik v. Cal. Teachers*
11  *Ass'n,* 326 F.3d 1042, 1052 (9th Cir. 2003) (issues abandoned before district court are
12  waived and will not be considered on appeal); *Pye v. Mitchell,* 574 F.2d 476, 480
13  (9th Cir. 1978) (appellate court will not review issues conceded below). MDY's
14  claim that the determination it was a copyright infringer prior to trial rendered
15  § 1201(f) irrelevant ignores the record. This Court held on summary judgment that
16  MDY had infringed Blizzard's copyright by loading its *code* into RAM in excess of
17  its license. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, CV-06-2555-PHX-DGC, 2008
18  WL 2757357 at *10 (D. Ariz. July 14, 2008). This Court, however, rejected
19  Blizzard's DMCA claim based on access to the code and reserved for trial the issue
20  of MDY's liability under 1201(a)(2) as to WoW's dynamic non-literal elements. *Id.*
21  at *13. Significantly, unlike the Ninth Circuit's ultimate disposition, this Court
22  required at trial that Blizzard demonstrate access *and subsequent copying* of those
23  non-literal elements to state a claim under (a)(2) (i.e., the "infringement nexus" under
24  *Chamberlain*). MDY could have argued in the alternative that if Blizzard could not
25  meet the infringement element, then it was insulated by § 1201(f), to preserve the
26  issue in the event that either this Court or the appellate court ruled that the
27  "infringement nexus" was not required. MDY made no such argument, nor any
28  proffer of evidence to substantiate an "interoperability" or "reverse engineering"

- 7 -

defense.  Again, MDY waived § 1201(f).

***MDY failed to argue a § 1201(f) defense in its opening (or any subsequent) brief on appeal.***  MDY did not argue that § 1201(f) applied in its opening brief on appeal, which it could have even under its interpretation of the law of the case doctrine, because it asked the Ninth Circuit to overturn this Court's ruling that it was a copyright infringer.  *See Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1182 (9th Cir. 2001) (failure to comply with Fed. R. App. P. 28(a)(9), results in waiver); *See Mendoza v. Block,* 27 F.3d 1357, 1363 (9th Cir.1994) (failure to raise an issue in an opening brief results in waiver of the issue on appeal).  Had it not already waived a potential § 1201(f) defense by failing to raise it in the district court, MDY could have raised it to the Ninth Circuit, because the Ninth Circuit could (and in fact did) reverse this Court's ruling on copyright infringement.  MDY understood that.  Indeed, MDY made other "alternative" arguments in its brief dependent on the Ninth Circuit's rejection of this Court's copyright ruling, including arguing that "[i]f it is legal to sell Glider under the Copyright Act, then Blizzard shouldn't be able to urge that selling to any intended user is an act of tortious interference."  (MDY First Br. on Cross App. at 42).  The record is clear that MDY recognized, as any appellant would, the obligation to argue the implications of reversal of one claim on other issues in the case.  Thus, MDY knowingly waived § 1201(f) by not addressing it in its opening brief.

III.   Section 1201(f) Does Not Excuse MDY's DMCA Liability

Setting aside the Ninth Circuit's mandate affirming the judgment and its ruling that MDY waived the § 1201(f) issue, MDY's thirteenth hour argument that § 1201(f) provides it safe harbor has no substantive merit.  The lack of merit is no doubt reflected in MDY's rational choice not to assert it among the myriad bases on which it challenged DMCA liability over the course of this litigation.  Section 1201(f) is inapplicable for at least the following four reasons:

***MDY contracted away any § 1201(f) rights.***  Even if § 1201(f) could

- 8 -

1  potentially be relevant under similar factual circumstances, MDY waived its reverse
2  engineering rights pursuant to a valid contract it has not challenged.  All versions of
3  the WoW EULA relevant to this case stated that:

> Subject to the license granted hereunder, you may not, in whole or in part, …. *reverse engineer* … the Game ….Failure to comply with the restrictions and limitations contained in this Section [] shall result in the immediate, automatic termination of the license granted hereunder and may subject you to civil and/or criminal liability.

(Blizzard Stmt. of Facts in Supp. of Its Mot. for Sum. J., Ex. 22 at 2 (emphasis added); *see also Id.* Ex. 21 at 3; Ex. 23 at 3).  The Eighth Circuit held that a party contracts away its § 1201(f) rights by assenting to a provision containing the *exact same language* contained in a different Blizzard EULA.  *Davidson & Assoc. v. Jung*, 422 F.3d 630, 639 (8th Cir. 2005) ("By signing the TOUs and EULAs, Appellants expressly relinquished their rights to reverse engineer."); *see also Bowers v. Baystate Techs, Inc.*, 320 F.3d 1317, 1325-26 (Fed. Cir. 2003) ("[P]rivate parties are free to contractually forego the limited ability to reverse engineer a software product under the exemptions of the Copyright Act[,]").  Even here the Ninth Circuit held that "the Copyright Act's preemption clause usually does not affect private contracts." *MDY*, 629 F.3d at 957.  MDY never challenged the enforceability of the EULA below, and in fact, the Ninth Circuit held that "a valid contractual relationship exists between Blizzard and its customers based on the operative EULA and TOU."  *MDY*, 629 F.3d at 955.  Accordingly, MDY in fact waived its § 1201(f) defense by assenting to the WoW EULA.[6]

---

[6] Indeed, MDY's breach of the EULA condition precluding reverse engineering would plainly constitute copyright infringement under the Ninth Circuit's copyright infringement analysis in this very case because the reverse engineering prohibition is both contained in the EULA's articulation of express limitations and MDY's copying of WoW code in breach of that provision would clearly implicate Blizzard's exclusive right to limit reproduction of that code.  *MDY*, 629 F.3d at 937-42.  As an infringer, of course, MDY is not entitled to 1201(f) protection.

***Section 1201(f) addresses code interoperability and has no bearing on MDY's unlawful access to the dynamic non-literal elements.*** The key term under § 1201(f), "interoperability," "means the ability of computer programs to exchange information, and of such programs mutually to use the information which has been exchanged." 17 U.S.C. § 1201(f)(4).  The scope of these exemptions is expressly limited to "computer programs" and does not authorize circumvention of access controls that protect other classes of copyrighted works, such as movies.  *Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211, 217-218 (S.D.N.Y. 2000).  The Ninth Circuit's DMCA ruling was based on access to the dynamic, expressive presentation of the non-literal audio-visual work, not the WoW software code or computer program itself (*i.e.* the literal elements), and thus § 1201(f) is inapplicable.

***MDY's 1201(f) argument cannot be squared with the Ninth Circuit's opinion.*** Somewhat ironically, it is MDY's reading of § 1201(f) that is irreconcilable with the Ninth Circuit's thoughtful discussion of the independent bases for and distinction between §§ 1201(a)(2) and (b)(1).  The Ninth Circuit held that (a)(2) "create[s] a distinct anti-circumvention right under § 1201(a) without an infringement nexus requirement."  *MDY*, 629 F.3d at 952.  If the Court were to accept MDY's conclusory statement that "MDY responded by modifying Glider to avoid detection so that Glider could continue to operate with WoW" as sufficient to establish the (f)(1) defense, the defense would be available to *all* (a)(2) defendants who were not also copyright infringers and thus (a)(2) and (b)(1) would collapse in the very manner the Ninth Circuit's holding rejected.  (MDY Mot. at 7).

***MDY never made the requisite showing of necessity.*** MDY's breezy assertion that it is "beyond dispute that Glider is independently created software for interoperable use with another software program" notwithstanding, MDY never offered evidence sufficient to meet its burden to establish the 1201(f) affirmative defense (which is not surprising given it never asserted it).  Namely, MDY did not demonstrate that its circumvention was "necessary" to reverse engineer the WoW

- 10 -

1  software for interoperability.  On the contrary, the record demonstrates that MDY
2  had unfettered access to WoW code and did not need to circumvent any access
3  control measure to develop the Glider program and ensure its interoperability with
4  the WoW code.[7]

5  Indeed, the Librarian of Congress's rulemaking on Anti-Circumvention makes
6  clear that he believes that interoperability and reverse engineering should not be
7  interpreted as broadly as MDY urges, otherwise it would be unnecessary to
8  specifically exempt (because § 1201(f) would not otherwise protect) "[v]ideo games
9  accessible on personal computers and protected by technological protection measures
10 that control access to lawfully obtained works, when circumvention is accomplished
11 *solely for the purpose of good faith testing for, investigating, or correcting security*
12 *flaws or vulnerabilities*" 37 C.F.R. § 201.40(4) (emphasis added).  Plainly, Glider
13 was not designed for any of the exempted purposes.

Dated:  May 3, 2011                         Respectfully submitted,

> /s/ Christian S. Genetski
> Christian S. Genetski (*Pro Hac Vice*)
> Zwillinger Genetski LLP
> 1705 N St NW
> Washington, DC 20036
> Facsimile (202) 706-5298
> Telephone (202) 296-3585
> *Attorneys for Defendants Blizzard*
> *Entertainment, Inc. and Vivendi*
> *Games, Inc.*

---

[7] The legislative history MDY cites is relevant to a much narrower point.  Rep. Bliley was addressing playability problems of media such as CDs or DVDs in consumer products and engaging in circumvention necessary to make older copy-protected discs playable on new equipment.  144 Cong. Rec. E2138 (daily ed. Oct. 13, 1998) (statement of Rep. Bliley).  In fact, it is unclear whether his remarks refer to § 1201(f) or § 1201(c), which directly addresses the "playback" problem.  *Id.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| Name | Email Address |
|---|---|
| Lance C. Venable | docketing@vclmlaw.com |
| Joseph Richard Meaney | docketing@vclmlaw.com<br>jmeaney@vclmlaw.com |

/s/  Christian S. Genetski