ZWILLGEN PLLC
Jacob A. Sommer (*Pro Hac Vice*)
1705 N St NW
Washington, DC 20036
Facsimile (202) 706-5298
Telephone (202) 296-3585

*Attorneys for Defendants Vivendi Games, Inc. and Blizzard Entertainment, Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| MDY INDUSTRIES, LLC, | **Case No.:** CV06-02555-PHX-DGC |
| Plaintiff and Counter-Claim Defendant | **MOTION FOR RELEASE OF BOND**[1] |
| vs. | |
| BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC. | |
| Defendants and Counter-Claim Plaintiffs. | The Honorable David G. Campbell |
| BLIZZARD ENTERTAINMENT, INC., and VIVENDI GAMES, INC. | |
| Third-Party Plaintiffs, | |
| vs. | |
| MICHAEL DONNELLY, | |
| Third-Party Defendant. | |

Defendant/Third Party Plaintiff Blizzard Entertainment, Inc. respectfully requests that the Court order that the full amount of the supersedeas bond be distributed to

---

[1] Although the Court's June 27, 2011 order addressed the bond issue, indicating that it would be addressed at the final pretrial conference, neither party had filed a formal motion or had been heard at oral argument on the issue. Accordingly, the instant request is styled as a motion for release of bond and not a motion for reconsideration. However, should the court treat it as a motion for reconsideration it has been filed in a timely manner, 14 days following the court's order pursuant to LRCiv. 7.2(g)(2).

Blizzard in partial satisfaction of its judgment against MDY. While the Court's order indicates a willingness to consider the issue at the pretrial conference, an earlier disposition could streamline the issues presented at trial, especially in the event that the parties are able to resolve the open issues and obviate the need for a trial.

The Court appears to have based its June 27, 2011 order on a mistake of fact, finding that "the bond was posted to secure the stay of the stipulated judgment on the claims for copyright and tortious interference" only and no bond was required for stay of the DMCA injunction. Dkt. 117 at 4 (citing Docket #116). The Order, however, fails to consider a material fact: that the DMCA *judgment* was entered after that decision and that the bond served to protect Blizzard's rights and stay the DMCA judgment as well. Aguirre v. Schomac Group, Inc., 04-1182 PHX-DGC, 2005 WL 3440705 (D. Ariz. Dec. 15, 2005) (citing Motorola, Inc. v. J.B. Rodgers Mech. Contrs., Inc., 215 F.R.D. 581, 586 (D. Ariz. 2003)); see also LRCiv. 7.2(g)(1). Release of the bond to Blizzard is thus necessary to enforce the purpose of a supersedeas bond—to protect Blizzard's rights as a judgment creditor. If Blizzard is not entitled to the bond amount, Donnelly could receive a substantial windfall. Indeed, according to documents Blizzard has received from MDY, it paid out approximately $173,348 in employee salaries since April of 2009 (including Mr. Donnelly's own salary), which Blizzard did not and could not execute on according to the Court's ruling, because the bond was determined to have provided adequate protection. Exh. A; Dkt. 142 at 5.

**Argument**

I.  The Bond Was Required to Stay Enforcement of Judgment on Blizzard's DMCA Claims

Federal Rule of Civil Procedure 62(d) *requires* a judgment debtor to post a supersedeas bond as a security for a stay of execution of judgment. Exxon Valdez v. Exxon Mobil, 568 F.3d 1077, 1084 (9th Cir. 2009). "The purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution..." Rachel v. Banana Republic, Inc.*,* 831 F.2d 1503, 1505 (9th Cir.1987). Indeed, a full bond is normally required, reductions or suspensions of a supersedeas bond are appropriate only "[i]n unusual circumstances" if the alterations "do not unduly endanger the judgment creditor's interest in ultimate recovery." Athridge v. Iglesias, 464 F. Supp. 2d 19, 23 (D.D.C. 2006); see also In re Wymer, 5 B.R. 802, 806 (B.A.P. 9th Cir. 1980).

As the Court's June 27, 2011 order correctly notes, its March 10, 2009 order was limited to the stay of the $6.5 million stipulated judgment based on Blizzard's copyright claims and tortious interference claims. At the time of that order, the parties had not stipulated to a judgment on Blizzard's DMCA damages, and the Court had no damages judgment regarding Blizzard's DMCA claims to consider. When the Court later addressed damages for Blizzard's DMCA claims on April 1, 2009 (Dkt. 122), it stated that because Blizzard acknowledged "the exact same underlying acts form the basis for each of Blizzard's claims, and the same harm flows from those violations" the "$6.5 million award in the stipulated judgment (Dkt. 114) should be applied to the DMCA claims." (Dkt. 122 at 3). In a subsequently-entered separate judgment on the DMCA claims, the Court entered a $6.5 million judgment against both MDY *and* Donnelly, and made no statement regarding whether it intended to absolve MDY and Donnelly of Fed. R. Civ. P. 69's bond requirements. Instead, the Court and the parties treated the

judgment as stayed because of MDY and Donnelly's already-posted bond. Accordingly, the bond was posted, in part, to stay the DMCA judgment.

On May 12, 2009, Blizzard moved to compel compliance with the Court's March 10, 2009 order, asking the Court to compel Donnelly, who was at the time held to be personally liable on all of Blizzard's claims, to deposit additional funds into escrow. Dkt. 132. On July 16, 2009, the Court denied Blizzard's motion. Dkt. 147. In doing so, the Court did not distinguish among the copyright, tortious interference, and DMCA judgments. Instead, it found that "A stipulated judgment in the amount of $6,500,000 has been entered against MDY *and* Donnelly on Blizzard's claims for tortious interference with contract, contributory and vicarious copyright infringement, and certain violations of the DMCA" and that "allowing Donnelly to keep his current salary and permitting MDY to retain its cash reserve will not unduly endanger Blizzard's interest in ultimate recovery" for violations of the Copyright Act, the DMCA and tortious interference. *Id.*

The Court's June 27, 2011 ruling is inconsistent with these decisions. The Court has never absolved MDY of the need to post a supersedeas bond to stay enforcement of the DMCA judgment. Having prevented Blizzard from going after Donnelly's assets based on the adequate protection of the bond, the court cannot now rule that the bond did not apply to the DMCA judgment.[2] Furthermore, there is no basis to treat the DMCA damages judgment differently from the copyright and tortious interference judgments. This is especially true given that the Court based the amount of the supersedeas bond on a finding that "the appeal will raise serious questions concerning the copyright *and DMCA claims*." (Dkt. 116 at 8) (emphasis added). Instead, the Court's orders merged all of the

---

[2] Indeed, Blizzard in that same motion requested that the Court provide it with a writ of execution under Fed. R. Civ. P. 70, which the Court denied.

- 4 -

judgments into one $6.5 million judgment that was stayed because of the already-filed supersedeas bond. As such, the Court should find that the bond was required for stay of the DMCA *judgment* and release the money deposited to Blizzard.

II.   Blizzard is Entitled to the Bond in Partial Satisfaction of the Judgment.

Pursuant to Federal Rule of Civil Procedure 69(a)(1), the procedure for execution of a money judgment is by a writ of execution in accord with the procedure of the state where the court is located. See also Office Depot Inc. v. Zuccarini, 596 F.3d 696, 700 (9th Cir. 2010) (applying state law to execution of judgments, unless it is in conflict with a federal law). Under Arizona law, monies deposited for a supersedeas bond shall be used to pay any judgment affirmed on appeal. A.R.S. § 12-2105.

The source of the funds is of no import. As described above, the Court did not distinguish between Donnelly's personal liability and MDY's when approving the supersedeas bond, and Donnelly and MDY made no effort to differentiate the bond amounts. Indeed, in responding to Blizzard's motion to compel, MDY vociferously objected to Blizzard's efforts to compel MDY to deposit its operating funds into escrow—instead arguing that the bond alone was sufficient to protect Blizzard's rights and allow MDY to continue to operate. Dkt. 142 at 7-8. In its order denying Blizzard's motion to require MDY to place portions of its operating account into escrow, the Court agreed stating that it "concludes that allowing Donnelly to keep his current salary and permitting MDY to retain its cash reserve will not unduly endanger Blizzard's interest in ultimate recovery." Dkt. 147. But that is *exactly* what will happen if Donnelly is able to recover money he previously used to prevent Blizzard from collecting the only cash that MDY had left at the time the judgment was entered. According to documents received

from MDY, attached as Exhibit A, it has paid out every cent in its operating accounts—much of it to Donnelly himself. Exh. A; Dkt. 142 at 5. The Court should not allow MDY and Donnelly to benefit from continued payment of Donnelly's salary from MDY's operating account pending appeal and recover the bond money that prevented Blizzard from enforcing its judgment against MDY's operating account or any of its other assets. Contrary to the purpose of a bond, the result would be a windfall for Donnelly at Blizzard's expense.[3]

III. Conclusion

Blizzard respectfully requests that the Court order that Blizzard is entitled to the full amount of the bond in partial satisfaction of its judgment against MDY for violations of the DMCA.

Dated:  July 11, 2011          Respectfully submitted,

/s/ Jacob A. Sommer
Jacob A. Sommer (*Pro Hac Vice*)
ZwillGen PLLC
1705 N St NW
Washington, DC 20036
Telephone (202) 296-3585
*Attorneys for Defendants Blizzard Entertainment, Inc. and Vivendi Games, Inc.*

---

[3] Even if MDY is correct that the money deposited was "Donnelly's" he effectively acted as a surety by providing the bond on MDY's behalf in order to stay execution of the judgment against MDY's operating account. Federal Rule of Civil Procedure 65.1 makes clear that Blizzard may recover the amount deposited by a surety for a judgment debtor's benefit. Furthermore, MDY and Donnelly admitted in their own prior filings that the monies deposited in escrow were MDY's profits: "the Court should be aware that Donnelly placed all of the *profit* distributions that Donnelly had received from MDY." Dkt. 142 at 7-8. While the monies came from Donnelly's investment account, they were Glider profits of the type Blizzard was entitled to collect under this Court's order on the supersedeas bond.

# CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| Name | Email Address |
|---|---|
| Lance C. Venable | docketing@vclmlaw.com |
| Joseph Richard Meaney | docketing@vclmlaw.com<br>jmeaney@vclmlaw.com |

/s/  Jacob A. Sommer